929 F.Supp. 1 (1996)
In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.
Bernadine K. FINDLEY, as Executrix of the Estate of Hilliard Findley; Uma Lail Caldwell, as Executrix of the Estate of Odell Caldwell; Edward Lindley, Joseph C. Jones, and James William Barnette, Jr., on behalf of themselves, and all others similarly situated as beneficiaries of the Manville Personal Injury Settlement Trust, Plaintiffs,
v.
Robert A. FALISE, Louis Klein, Jr., Christian E. Markey, Jr., and Frank Macchiarola, not individually, but solely in their capacities as Trustees of the Manville Personal Injury Settlement Trust, Defendants.
In re JOHNS-MANVILLE CORPORATION, et al., Debtors.
Nos. CV-90-3973 (E.D.N.Y.), CV-90-7518 (S.D.N.Y.).
United States District Court, E. and S.D. New York.
June 10, 1996.
*2 Caplin & Drysdale (by Elihu Inselbuch, James Sottile, IV, Christian R. Pastore), New York City, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Inc. (by Harry F. Wartnick), San Francisco, CA, Baron & Budd, (by Frederick M. Baron), Dallas, TX, Rose, Klein & Marias, (by Robert B. Steinberg), Los Angeles, CA, Ness, Motley, Loadholt, Richardson & Poole, P.A. (by Ronald L. Motley, Joseph F. Rice), Charleston, SC, Wilentz, Goldman & Spitzer, P.C., (by Christopher M. Placitella, Philip Pahigian), Woodbridge, NJ, for Class.
Paul, Weiss, Rifkin, Wharton & Garrison, (by Leslie Gordon Fagen, Jean McMahon), New York City, for Future Claimants.
Pepper, Hamilton & Scheetz (by Francis J. Lawall, Charles H. Carpenter), Philadelphia, PA, Steele & Sales, P.S., (by Katherine Steele), Seattle, WA, for Distributor Sub-class.
Debevoise & Plimpton, (by Anne E. Cohen, Roger E. Podesta), New York City, for Codefendant Subclass.
Lani A. Adler, New York City, for Subclass of Claimants with Pre-November 1990 Settlements and Judgments.
John H. Faricy, Jr., Minneapolis, MN, for MacArthur Subclass.
Weitz & Luxenberg, P.C., (by Perry Weitz, Richard Nemsoff), New York City, for Subclass of Present Claimants.
Cohen, Shapiro, Polisher, Shiedman & Cohen (by Roberta Golden, Robert Lapowsky, Judah Labovitz), Philadelphia, PA, for Pacor Settlement Trust.
Law Offices of Peter G. Angelos, (by Peter G. Angelos, Timothy J. Hogan), Baltimore, MD, for Maryland Plaintiffs.
Goldberg, Persky, Jennings & White, P.C. (by Craig L. Vandergrift, Theodore Goldberg, Robert L. Jennings), Pittsburgh, PA, for Pennsylvania Plaintiffs.
Cooney & Conway (by Kathy Byrne), Chicago, IL, Gavin & Gavin (by James C. Gavin), Philadelphia, PA, Greitzer & Locks (by Lee B. Balefsky), Philadelphia, PA, Thomas W. Henderson, Pittsburgh, PA, Hal Pitkow, Washington Crossing, PA, Robert E. Sweeney Co., L.P.A. (by Robert E. Sweeney), Cleveland, OH, for Various Other Claimants.
Carla G. Hancock and Maxine Smith, Vivian, LA, for J.C. Smith.
Pollack & Greene (by Harold Goldfuss), for Laura Goldfuss.
Ms. Zeldonia J. Jackson, Fort Worth, TX, for Estate of George E. and Tena Lee Jackson, Sr.
*3 Berlack, Israels & Liberman (by Carole L. Fern), New York City, for Keene Corp.
Hodgson, Russ, Andrews, Woods & Goodyear (by Michael P. Murphy), Buffalo, NY, Wiley, Rein & Fielding (by Bert W. Rein, Keith S. Watson), Washington, DC, for United States Fidelity & Guaranty Co.
Whiteford, Taylor & Preston, L.L.P. (by Louis G. Close, Jr., Gardner M. Duvall), Baltimore, MD, for Porter Hayden Co.
Jeffrey M. Weiner, Wilmington, DE, for DI Distributors, Inc.
Myles O'Malley, William Rausnitz, Barbara Zelluck, Newark, NJ, for National Asbestos Victims Legal Organizing Committee and the White Lung Information Centers of New York and New Jersey.
James Fite, Paul Safchuck, Baltimore, MD, for White Lung Association.
David T. Austern, Patricia Dansbury, Manville Personal Injury Settlement Trust, Fairfax, VA, Donovan, Leisure, Newton & Irvine (by James L. Stengel, Laurie S. Dix, Richard De Marco, Steven Fink), New York City, for Manville Personal Injury Settlement Trust.
Mark Peterson, Rand Institute, Santa Monica, CA, Special Advisor to the Courts.

AMENDED MEMORANDUM, ORDER, AND JUDGMENT
WEINSTEIN, Senior District Judge, and BURTON R. LIFLAND, Bankruptcy Judge:

 I. Introduction .......................................................... 3
 II. When Federal Courts Must Decide an Issue of State Law ................. 4
 A. Duty to Decide ..................................................... 4
 B. Discretion and the Declaratory Judgment Act ........................ 5
 C. Terms of Settlement ................................................ 6
 1. Power to Reject Entirely ........................................ 6
 2. Limited Power to Interpret ...................................... 6
 3. New Conditions Requiring Modification ........................... 6
 4. Court of Appeals' Limitation on Courts' Powers .................. 6
 III. Law of Maryland as Construed by the Court of Appeals .................. 7
 IV. Post-Remand Proceedings ............................................... 7
 A. Requests From Courts to Parties .................................... 7
 B. Remand Precludes Certification to Maryland Courts .................. 8
 C. Evidentiary Hearings ............................................... 8
 D. Courts' Conclusions ................................................ 8
 V. Order Interpreting Maryland Law ....................................... 9
 A. Text ............................................................... 9
 B. Illustrative Examples .............................................. 9
 VI. Fairness ............................................................. 10
 VII. Conclusion ........................................................... 10

I. Introduction
A class action against the Manville Trust was settled during trial. Payment by the Trust of some 10% of the value of injured workers' claims was agreed to under the terms of the settlement. See Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir.1988) (Manville I) (affirming Second Amended Plan of Reorganization); In Re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710 (E. & S.D.N.Y.1991) (Manville II) (certifying class and approving original settlement for Manville reorganization); In Re Joint E. & S. Dist. Asbestos Litig., 982 F.2d 721 (2d Cir. 1992) (Manville III), as modified, 993 F.2d 7 (2d Cir.1993) (Manville III.A) (vacating settlement); In Re Joint E. & S. Dist. Asbestos Litig., 878 F.Supp. 473 (E. & S.D.N.Y.1995) (Manville IV) (approving new settlement); In Re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764 (2d Cir.1996) (Manville V) (remanding for resolution of Maryland law issue and affirming Manville IV in all other respects).
The only issue unresolved is the effect under Maryland law of the settlement in *4 allocating responsibility for payment when judgment is entered in that state. Manville V, 78 F.3d at 776-77. The agreement, the court of appeals has ruled, requires the district courts in the Southern and Eastern Districts of New York and the bankruptcy court in the Southern District of New York ("the courts") to resolve that issue by predicting how the Maryland Court of Appeals would apply "Maryland set-off principles ... in the context of the present Settlement." Id. at 776. For the reasons indicated below, the courts predict that the Maryland Court of Appeals would exclude the Trust in determining the number and size of pro rata shares and would credit amounts settled by the Trust to defendants adjudicated joint tortfeasors who have not already settled.

II. When Federal Courts Must Decide an Issue of State Law
In determining the obligation of the courts to decide this dispositive issue of state law, three principles must be considered. These are first, the general obligation of the courts to decide every issue properly posed, leading to a general duty not to abstain. Second, since the courts are being asked, in effect, for a declaratory judgment on the effect of the settlement on future litigations in the Maryland courts, the discretion to avoid decisions under the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure must be considered. Third, when the courts have approved a class action settlement, the extent to which they have discretion to vary or interpret its terms to minimize "duties" placed upon judges by the parties has a bearing.

A. Duty to Decide
With limited exceptions, it is the duty of the federal courts when acting as if they were state courts enforcing state substantive law pursuant to Erie principles to decide what the state law is. See In Re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 774-76 (2d Cir.1996) (Manville V); In Re Joint E. & S. Dist. Asbestos Litig., 878 F.Supp. 473, 546-56 (E. & S.D.N.Y.1995) (Manville IV); see also Braune v. Abbott Laboratories, 895 F.Supp. 530, 542 (E.D.N.Y.1995). The court of appeals in Manville V relied upon the subset of the somewhat murky Burford-type abstention doctrine to define this duty. See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Burford issue was raised by defendants for the first time on appeal. The views of the courts were, therefore, not before the court of appeals.
Professor Charles Alan Wright has characterized Justice Scalia's statement of the Burford rule to be "as good a summary of Burford as can be hoped for." Charles A. Wright, Law of Federal Courts 331 (5th ed. 1994). Writing for the Court, Justice Scalia pointed out that the difficulty of the state law question and disruption of coherent state policy must be considered in deciding whether to abstain.
Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."
New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244-1245, 47 L.Ed.2d 483 (1976).
Laws governing mass torts in Maryland and other states, and particularly those dealing with allocation of responsibility for judgments when there are settlements by less than all responsible defendants, appears to fall within both terms of the Burford rule as summarized by Justice Scalia. Recent extensive state statutory intervention and substantial changes by the courts in the tort field implicate the questions of 1) possible disruption of state policy transcending the results in the particular case and 2) coherent *5 state policy. Both are at stake in the instant case. Each state has developed its own legislative-judicial scheme which is often incomplete and in a state of development. See In Re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 869-905 (E. & S.D.N.Y.1991) (considering choice-of-law problems in global settlement context); see also Braune v. Abbott Laboratories, 895 F.Supp. 530, 557-66 (E.D.N.Y.1995) (application of choice-of-law principles and borrowing statutes to DES claims by nonresidents); In re DES Cases, 789 F.Supp. 552, 560-69 (E.D.N.Y.1992).
Vast changes in tort law are underway as a result of extensive legislative and judicial efforts in the area of mass torts. Billions of dollars, the health and welfare of hundreds of thousands of injured individuals, and the viability of whole industries is at stake. The issues posed involve difficult policy problems. State and federal administrative regulatory bodies as well as the courts are implicated in this rapidly changing complex field. See, e.g., Richard A. Nagareda, Turning From Tort to Administration, 94 Mich.L.Rev. 899, 900-02 (1996) (noting increasing tendency of mass tort settlements to resemble administrative and regulatory schemes); John C. Coffee, Jr., Class Wars: The Dilemma of Mass Tort Class Actions, 95 Colum.L.Rev. 1343 (1995); American Law Institute, Complex Litigation (1994); Deborah R. Hensler & Mark A. Peterson, Understanding Mass Personal Injury Litigation: A Socio-Legal Analysis, 59 Brooklyn L.Rev. 961, 967 (1993); Glen O. Robinson & Kenneth S. Abraham, Collective Justice in Tort Law, 78 Va.L.Rev. 1481 (1992). As the Supreme Court has recognized, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) (citation omitted).
That these issues involve policies important to the people and institutions of Maryland can not be doubted. More than ten thousand claims based on asbestos-caused diseases have been brought in Maryland's state and federal courts.
The court of appeals has taken a narrow view of Burford abstention. In its view, Burford is apparently limited to complexities in state regulatory issues involving administrative agencies. Yet, details in balancing important substantive and procedural rights through tort law at the state and federal levels are constantly changing. That reality should be acknowledged in applying Burford.

B. Discretion and the Declaratory Judgment Act
It is somewhat misleading to state that "[i]t is always discretionary whether to entertain an action for a declaratory judgment." Charles A. Wright, Law of Federal Courts 715 (5th ed. 1994). While the Declaratory Judgment Act "`is an enabling Act' which confers a discretion on the courts rather than an absolute right upon the litigant," Green v. Mansour, 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (citation omitted), abstention, even in the area of declaratory judgments, is not sound as a general matter merely to avoid difficult state law questions. See, e.g., Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Still, there is often good reason to avoid decision of uncertain state law in some declaratory judgment cases even when, as here, there is an "actual" controversy.
In the instant case parties not presently before the court  both defendants and plaintiffs  will be bound by the judgment. Maryland state court judgments will be rendered long into the next century as latent asbestos injuries reveal themselves and new claims are made. In the years ahead the Maryland legislature and courts may well change relevant tort substantive and procedural law.
Under such circumstances, federal courts probably should not grant a declaratory judgment. Professor Wright warned that the Supreme Court is not likely to approve such an incursion of federal courts into state law of the future. Wright, supra, at 716-717.
The Supreme Court has frequently, although not invariably, indicated a marked reluctance to have important issues of public law resolved by declaratory judgments. It has said that declaratory-judgment procedure should not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or *6 special tribunal, and warned against grant of a declaratory judgment involving an important question of public law on the basis of a sparse and inadequate record. The Court has said also that questions of the scope and constitutionality of legislation must not be decided "in advance of its immediate adverse effect in the context of a concrete case."
Id. (footnotes omitted); see also, e.g., Edwin Borchard, Declaratory Judgments 293-314 (2d ed. 1941) (judicial discretion); Hartford Accident & Indemnity Co. v. Hop-on International Corporation, 568 F.Supp. 1569 (S.D.N.Y.1983); cf. Note, And Justiciability for All, 109 Harv.L.Rev. 1066, 1083 (1996) (problems of justiciability of future claims in mass tort cases).
There is no need to consider this issue further. Even though it is not mentioned in the court of appeals decision, the mandate controls the declaratory judgment issue in the instant case.

C. Terms of Settlement
Discretion respecting the interpretation and enforcement of terms contained within a class action settlement agreement may be characterized under three headings.

1. Power to Reject Entirely
First, if a settlement term is of sufficient importance and the courts find it so unpalatable as to warrant characterizing the settlement as unfair, there is wide, but not unlimited, discretion to reject the settlement. See Evans v. Jeff D., 475 U.S. 717, 726-27, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986) (court limited to accepting or rejecting entire settlement); In Re Joint E. & S. Dist. Asbestos Litig., 982 F.2d 721, 733 (2d Cir.1992) (Manville III) (judge may suggest but not impose settlement terms); Karin S. Schwartz et al., Notes From the Cave: Some Problems of Judges in Dealing With Class Action Settlements, 163 F.R.D. 369, 375-77 & n. 30 (1995) (criticizing doctrine that judge's role is limited by the cases in accepting or rejecting the entire settlement).

2. Limited Power to Interpret
Second, if the settlement is approved, the court has a limited discretion to interpret it in a way that substantially changes an important aspect. Manville III, 982 F.2d at 746-47 (limited power to modify settlement without express amending authority); Schwartz et al., supra, at 377 (court may not interpret settlement in manner that conflicts with language of settlement).

3. New Conditions Requiring Modification
Third, there must be some discretion in applying a settlement's terms as new conditions require fine-tuning of an ongoing arrangement to meet new conditions or problems revealed in its operation. By restricting interpretive discretion, the courts of appeals encourage the trial courts to become more involved in working out the terms of the settlement itself in order to ensure that the details of the final settlement will be acceptable to the court as "fair." See Schwartz et al., supra, at 378-79 (noting need for greater judicial involvement in reaching appropriate settlements); see also Georgine v. Amchem Products, 157 F.R.D. 246 (E.D.Pa.1994) (intervention of trial judge suggested that another judge should review settlement's fairness to insure impartiality).

4. Court of Appeals' Limitation on Courts' Powers
The court of appeals by its decision in In Re Joint E. & S. Dist. Asbestos Litig., 982 F.2d 721 (2d Cir.1992) (Manville III), and in the present mandate, In Re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764 (2d Cir. 1996) (Manville V), has decided that the courts have no discretion to avoid deciding the law of Maryland. The mandate implies that a refusal to decide the Maryland law issue would impermissibly substantially change an important aspect of an approved settlement.
For the reasons already suggested in Part II.A & B supra, the courts believed it more consonant with state-federal comity to interpret the agreement as being satisfied if they merely decide under the rules of choice of law, as they did in Manville IV, 878 F.Supp. *7 473, 546-56 (E. & S.D.N.Y.1995), which state law governs. The mandate requires the courts to go further and decide what the law of Maryland will be as long as the Trust continues.

III. Law of Maryland as Construed by the Court of Appeals
The court of appeals summarized possible findings defining the law of Maryland "with respect to the issue of what set-off rules would apply to the claims of plaintiff class members residing in Maryland" as follows:
[T]here was evidence [at trial] that the Maryland set-off statute creates a right of contribution among two or more joint tortfeasors once one joint tortfeasor has discharged the common liability or paid more than its pro rata share of the judgment. There was evidence that the recovery of a judgment by an injured person against one joint tortfeasor does not discharge other joint tortfeasors from liability for the amount of the settlement unless the plaintiff executed a release so providing. In the latter event, the claim against the other joint tortfeasors is reduced by the amount of consideration paid for the release, or by a greater amount if the release so provides.
In Re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 772 (2d Cir.1996) (Manville V) (citations omitted). It described three types of releases that are used in Maryland to control set-off:
(1) a pro tanto release, which provides a set-off against liability in an amount equal to the consideration paid for the release if the settling party is found a joint tortfeasor; (2) a conditional pro rata release, which permits a set-off for the amount of the settling party's pro rata share of the judgment if the settling party is found to be a joint tortfeasor; and (3) an unconditional pro rata release, which provides for a pro rata set-off against the judgment regardless of whether the settling defendant is found to be a joint tortfeasor. . . .
Id.
Under Maryland law, one of these three releases is deemed to have been given whenever a joint tortfeasor settles. As the court of appeals noted, "the plain language of the statute provides only for a pro tanto reduction in liability in the absence of an express agreement to the contrary." Id. at 777.
In remanding the issue the court of appeals mandated that the trial courts determine how the Maryland Court of Appeals would apply Maryland set-off principles "in the context of the present Settlement." Id. at 776; see also Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994) (Erie requires federal courts to predict what highest state court would do absent applicable precedent from that court); In Re E. & S. Dist. Asbestos Litig., 772 F.Supp. 1380, 1389 (E. & S.D.N.Y.1991), rev'd in part on other grounds sub nom., In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.), 971 F.2d 831 (2d Cir. 1992) (same).

IV. Post-Remand Proceedings

A. Requests From Courts to Parties
Preparatory to hearings on the Maryland choice of law issue, the courts wrote to counsel after the court of appeals decision with the following requests:
Please arrange . . . for an early conference and supplementary evidentiary hearing, in view of the Court of Appeals decision. Please address the following questions, and any others the parties deem relevant.
I. Are there any devices to assist the courts by obtaining advice from the Maryland courts by means of certification of a question, a test case, a declaratory judgment, or otherwise? If so, how should it be used?
II. What is the form of release the plaintiffs' representatives will insist upon in taking the Manville settlement amounts? Set out the exact form of release and characterize it pursuant to the three categories set out in the Court of Appeals opinion. Sworn testimony on this issue is desired.
III. What is the form of release appellants believe the plaintiffs' representatives *8 and the Trust should accept in taking the Manville settlement amounts? Set out the exact form of release and characterize it pursuant to the three categories set out in the Court of Appeals opinion. Sworn testimony on this issue is desired.
IV. Whatever the answers and the courts' decision on II and III, supra, if the courts rule that the form of the release will not, in any way, affect payments from the Trust and its representatives, does the Trust insist on a form of release like that set out in answer to II or III, supra, or in any other form? Will the Trust accept the form of release ordered by the courts? If the form the Trust requests is different from those set out in answer to II and III, supra, set out the form and characterize it pursuant to the three categories set out in the Court of Appeals opinion. Sworn testimony on this issue is desired.
V. Should the courts postpone holding a hearing while the parties seek reargument, certiorari, amendment of the Court of Appeals order, further settlement discussions, or for any other reason? Explain.

B. Remand Precludes Certification to Maryland Courts
Maryland law apparently would have permitted either the courts or the court of appeals for the Second Circuit to certify the question to the Maryland Court of Appeals. See Md.Code Ann.Cts. & Jud.Proc. § 12-601 (permitting certification of questions of Maryland law by federal district and appellate courts as well as by other state courts). The mandate issued by the second circuit court of appeals in this case, however, requires that the district courts decide the question without deferring to a Maryland forum. See In Re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 780 (2d Cir.1996) (Manville V) (judgment deferring Maryland issue to Maryland courts set aside and remanded to trial courts for resolution). The parties, moreover, all agree that the courts should decide the question. They oppose any effort to certify the question to the Maryland Court of Appeals.

C. Evidentiary Hearings
The courts held full evidentiary hearings. Plaintiffs' counsel testified that the Manville Trust's release would be treated as a pro tanto release under Maryland law. All parties agree that the releases usually provided by the other settling joint tortfeasors in the Maryland cases are pro rata releases.
Plaintiffs' counsel presented a "compromise" proposal to exclude the Manville Trust in determining the number of joint tortfeasors and the size of the pro rata shares. Under this proposal, the amount paid by the Trust would be deducted from the total judgment before determining the size of the pro rata shares.
Co-defendants presented testimony that Maryland law does not contemplate the unique problem posed by the Trust, an entity that is solvent, whose liabilities are in essence fixed by a settlement agreement, but yet is not fully able to meet its liabilities as they come due. Under the settlement, they argued, the Trust confounds the underlying assumption of Maryland law that a joint tortfeasor can be made to pay a pro rata share, irrespective of whether it pays to the plaintiff or to a co-defendant.
The co-defendants proposed as a "compromise" a "hybrid proposal" with different rules governing verdicts of (1) less than $1 million, (2) verdicts between $1 million and $2 million, and those between $2 million and $3 million involving three or more joint tortfeasors excluding the Trust, and (3) all other verdicts. Their solution would assign the Trust a pro rata share only in the third category of verdicts. It would fix in each of the first two categories the amount by which the non-settling defendants' share of the verdict would be reduced. In the third category the proposal would cap the Trust's pro rata share at 20% of the verdict.

D. Courts' Conclusions
It is not consonant with Maryland law to treat any release involving the Manville Trust strictly as a pro tanto or pro rata release as ordinarily contemplated under Maryland law. Given the reality of high damages awards in Maryland, the considerable *9 number of defendants who are joint tortfeasors, and the difficulty of treating the Trust in a manner consistent with Maryland law, the outcome that is most in keeping with Maryland law is to (1) exclude the Trust from calculations of other settling defendants' pro rata shares, and (2) credit amounts settled by the Trust to joint tortfeasors who have not settled. If no settlement is made by the Trust before judgment is entered, the codefendants will stand in the plaintiff's shoes and may proceed against the Trust for a contribution of what the Trust would have paid to the plaintiff had he settled before judgment.
The "hybrid" proposal advanced by the codefendants is out of touch with the facts and with Maryland law and is too complex to be routinely applied in the future. It is too generous to the defendants.
The plaintiffs' proposal did not adequately reflect the inappropriateness of treating the Manville Trust as a typical settling joint tortfeasor under Maryland law. It is too generous to plaintiffs.
The approach adopted by the courts adequately balances the interests of all parties. It also adheres as closely to the principles and methodology of Maryland law as possible given the special circumstances of the Trust and its relations to the parties.
It makes no difference to the Trust how the courts rule. It will pay the same amount in any event.

V. Order Interpreting Maryland Law
The courts find on the evidence and on the law set out in Manville V, 78 F.3d at 777, and Manville IV, 878 F.Supp. at 546-56, that the following resolution of the problem is required.

A. Text
In cases tried to verdict, the Trust shall not be counted as a joint tortfeasor in calculating the value of the statutory pro rata shares of the verdict. If the plaintiff has settled his or her claim with the Trust at or before the time judgment is entered, the judgment against any non-settling tortfeasors shall be reduced by the amount of the settlement. Where there is more than one such non-settling tortfeasor, they shall share the benefit of such reduction on a pro rata basis.
If the plaintiff has not settled his or her claim with the Trust at the time judgment is entered, the parties against whom judgment is entered shall have a Contribution Claim as provided in section H.4. of the Trust Distribution Process attached as Exhibit A to the Stipulation of Settlement between the parties dated July 25, 1994. See In Re Joint E. & S. Dist. Asbestos Litig., 878 F.Supp. 473, 594 (E. & S.D.N.Y. 1995) (Appendix).
All capitalized terms shall have the meanings set forth in the Glossary that is Exhibit A to the Second Amended and Restated Plan of Reorganization of the Johns-Manville Corporation, et al.

B. Illustrative Examples
The following two examples illustrate how the nonsettling co-defendants' shares will be determined under the rule adopted by the courts.
In the first example, depicted in Table 1, the verdict establishes damages totalling $1,000,000. There are four joint tortfeasors, not including the Trust, which is excluded. Three of the four joint tortfeasors have settled, obtaining pro rata releases. The Trust settled with the plaintiff, paying $20,000. The first step is to divide $1,000,000, the total verdict, by four, the number of joint tortfeasors. This produces a pro rata share of $250,000. The second step is to subtract $750,000  the sum of the pro rata shares for the three settling joint tortfeasors  from the $1,000,000 total verdict. Finally, from the remaining $250,000, $20,000 is subtracted for the settled amount. The amount remaining, $230,000, is the amount of the judgment against the nonsettling joint tortfeasor.
In the second example, depicted in Table 2, the verdict establishes damages totalling $1,000,000. There are four joint tortfeasors, not including the Trust, which is excluded. Two of the four joint tortfeasors have settled, obtaining pro rata releases. The Trust settled with the plaintiff, paying $20,000. First, *10 the total verdict of $1,000,000 is divided by four, the number of joint tortfeasors, to produce a pro rata share of $250,000. Next, $500,000 is subtracted  the sum of the pro rata shares for the two settling joint tortfeasors  from the $1,000,000 total verdict. Finally, from the remaining $500,000, $20,000 is subtracted for the settled amount. The amount remaining, $480,000, is the amount of the judgment against the two nonsettling joint tortfeasors.

 TABLE 1
VERDICT = $1,000,000
4 joint tortfeasors ("JTF's"), not including
the Trust 3 of the 4 JTF's settle, obtaining
pro rata releases Trust payment to plaintiff
= $20,000
 $ 1,000,000 VERDICT
 ÷ 4 JTF's
 ___________
 $ 250,000 pro rata share
 $ 1,000,000 VERDICT
 - 750,000 3 settling JTF's
 ___________
 $ 250,000
 - 20,000 Trust Payment
 ___________
 $ 230,000 Judgment against
 non-settling JTF
--------------------------------------------------
 TABLE 2
VERDICT = $1,000,000
4 joint tortfeasors ("JTF's"), not including
the Trust 2 of the 4 JTF's settle, obtaining
pro rata releases Trust payment to plaintiff
= $20,000
 $ 1,000,000 VERDICT
 ÷ 4 JTF's
 __________
 $ 250,000 pro rata share
 $ 1,000,000 VERDICT
 - 500,000 2 settling JTF's
 ___________
 $ 500,000
 - 20,000 Trust Payment
 ___________
 $ 480,000 Judgment against 2
 non-settling JTF's

VI. Fairness
The compensation to be paid by the Trust will almost certainly not appreciably exceed 10% of the value of any plaintiff's claim because the number of claims continues to rise. Even if more than 10% of the value of the claim will be received ultimately, payment will be far in the future. Given the time value of money, the added benefit to plaintiffs will be almost nil.
Many plaintiffs from Maryland have waited many years for payment both because of the bankruptcy stays and the post-bankruptcy delays in settling this case. None of that delay will be compensated by interest on the settlement amount. It would therefore be inequitable to shift the total loss due to the shortfall in Trust funds to the plaintiffs.
Similarly, it would be inequitable not to give defendants who go to trial the benefit of Trust settlements actually obtained by plaintiffs. Settling defendants will presumably, based upon history of the litigation in Maryland, obtain a discount for settling before judgment.

VII. Conclusion
The law, the facts, and equitable considerations all lead to the conclusion that the order set out in Part V.A, supra, should apply in Maryland in asbestos cases involving the Trust. The courts are compelled by the mandate to predict that this would be the conclusion of the highest court of Maryland. Manville V, 78 F.3d at 776.
SO ORDERED.