Christian v. Barricade Books          CV-02-408-B     05/15/03

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Tonya Christian (f.k.a. Kasabian)**

    **v.**                                        Civil No. 02-408-B
_____Opinion No. 2003 DNH 078
**Barricade Books, Inc.**

### MEMORANDUM AND ORDER

Tonya Christian filed this civil action seeking compensatory damages from Barricade Books, Inc. for defamation and invasion of privacy.  Barricade moves to dismiss for lack of personal jurisdiction. (Doc. No. 12).  For the reasons set forth below, I grant Barricade's motion.

### I.  BACKGROUND

Barricade, a New York corporation, conducts its book publishing business principally from offices located in New Jersey.  The company has no New Hampshire offices.  It does not have any employees or agents who work in the state.  Nor does it target New Hampshire in its marketing efforts.

Christian, is a 35 year-old resident of Rochester, New Hampshire.  She is the daughter of Linda Kasabian, a one-time follower of Charles Manson who, along other members of Manson's "family," murdered the actress Sharon Tate.

In 1999, Barricade entered into an agreement with Greg King to publish his book, Sharon Tate & the Manson Murders.  The book is a biography of Tate which purports to describe the "[s]trange connections between Sharon Tate, the Hollywood elite and Charles Manson's so-called 'family'. . . ."  Def.'s Mot. to Dismiss.  King makes the following statement about Christian in the book's epilogue:

> On October 24, 1996, members of the Tacoma, Washington Police Department served a search warrant on the apartment owned by Kasabian's daughter Tanya [sic], known to authorities as "Lady Dangerous."  Kasabian, as well as Tonya's two young children, were present when the police arrived.  Their report stated: "In the master bedroom (defendant's bedroom) officers located a small baggie containing suspected rock cocaine and a large bundle of cash in a dresser drawer.  On top of the dresser was a bunch of baggies.  Also in the room officers located a .45 caliber semi-automatic handgun, ammunition, electronic scales, a plate with cocaine residue, and another bundle of cash. . . Tanya [sic], found guilty of possession of controlled substances, was sentenced to a year in state prison.

Christian charges that this statement mistakenly confuses her with her sister, Quanu and is defamatory because she has never

been convicted of possession of a controlled substance.

Barricade published approximately 12,500 copies of the Sharon Tate book and sold approximately 8,700 copies. It distributed the book through national book chains, book wholesalers, book jobbers[1], and selected independent book stores. None of the book chains, wholesalers, or jobbers to whom Barricade shipped copies of the book are based in New Hampshire. Barricade did not control the manner in which these businesses attempted to sell the book. Nor did Barricade know where the books were ultimately sold.

Christian has produced affidavits from two people who purchased the Sharon Tate book in New Hampshire. One of the affiants purchased a copy of the book from a Borders book store located in Concord, New Hampshire. The other affiant ordered a copy of the book from the on-line bookseller, Amazon.com. Christian has also established that Barricade shipped one copy of the book to the Dartmouth Book Store, an independent book store located in Hanover, New Hampshire. The store was not able to

---

[1] Book jobbers purchase books on return from a number of publishers and ship those books on return to retailers.

sell the book, however, and later returned it to Barricade.  Aff. of Douglas Rexford, ¶ 2-3; see Ex. 1 to Def.'s Mot. to Dismiss.[2]  The record is devoid of evidence suggesting that any other copies of the book were actually shipped to or sold in New Hampshire.

## II.  STANDARD OF REVIEW

When personal jurisdiction is contested, the plaintiff bears the burden of establishing that such jurisdiction exists.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 n.9 (1st Cir. 1994).  Where, as is the case here, I have not held an evidentiary hearing, a plaintiff need only make a prima facie showing that the court has personal jurisdiction.  See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing United Elec., Radio, & Mach. Workers v. 163 Pleasant

_____

[2]  Christian requests that I strike the affidavits of Douglas R. Rexford and Lyle Stuart (president of Barricade), attached to Barricade's motion to dismiss. Christian argues that the two affidavits should be stricken because they were submitted in violation of Local Rule 5.1(e) which requires that all affidavits identify the filing they support or oppose by indicating the filing's title.  I decline to strike the two affidavits based on what, at most, is a non-prejudicial failure to comply with the local rules.

-4-

Street Corp., 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter Pleasant Street. II]).

In meeting the prima facie standard, Christian must submit "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prods. Inc., 967 F.2d 671, 675 (1st Cir. 1992); see Pleasant Street. II, 987 F.2d at 44. Christian must not rest on the pleadings. See id. Supporting evidence must be based on evidence of specific facts set forth in the record. See id. I take the specific facts alleged by the plaintiff, both disputed and undisputed, as true and construe them in a light most favorable to the plaintiff's claim. See Mass. Sch. of Law, 142 F.3d at 34; Ticketmaster, 26 F.3d at 203. I also consider facts put forward by Barricade to the extent that they are uncontradicted. See Mass. Sch. of Law, 142 F.3d at 34. While the prima facie standard is a liberal one, the law requires that I not "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law, 142 F.3d at 34; (quoting Ticketmaster, 26 F.3d at 203).

# III. ANALYSIS

When assessing personal jurisdiction in a diversity of citizenship case, the court "'is the functional equivalent of a state court sitting in the forum state.'" Sawtelle, 70 F.3d at 1387 (quoting Ticketmaster, 26 F.3d at 204). As such, in order for this court to have jurisdiction, I must find that the contacts between Barricade and New Hampshire satisfy both the New Hampshire long-arm statute and the requirements of the Fourteenth Amendment's due process clause. See id. The New Hampshire long-arm statute permits this court to exercise jurisdiction to the full extent permitted under federal due process analysis. See Phelps v. Kingston, 130 N.H. 166, 171 (1987). Accordingly, the traditional two-part analysis for personal jurisdiction merges into a single analysis of whether the requirements of the due process clause have been met. See Sawtelle, 70 F.3d at 1388.

The ultimate purpose of the due process requirement is to ensure "fundamental fairness" by requiring defendants to have certain "minimum contacts" with the forum state. See Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945); Ticketmaster, 26 F.3d at 206. The assessment of a defendant's minimum contacts is fact-specific, "involving an individualized assessment and

factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

A court may assert jurisdiction over a defendant under a theory of either general or specific jurisdiction. See Mass. Sch. of Law, 142 F.3d at 34 (citations omitted). Christian argues only that this court has specific personal jurisdiction. Specific jurisdiction exists if there is a "demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Id. The First Circuit employs a three-part test to determine whether the defendant's contacts are sufficient to give rise to specific jurisdiction. See id., accord Sawtelle, 70 F.3d at 1388-89. This test requires that I analyze: (1) relatedness; (2) purposeful availment; and (3) reasonableness. Id.

1. **Relatedness**

The relatedness component of the personal jurisdiction test requires that Christian's underlying defamation and invasion of privacy claims "[d]irectly arise out of, or relate to" Barricade's New Hampshire activities. Sawtelle, 70 F.3d at 1389. The relatedness inquiry ensures that "the element of causation

remains at the forefront of the court's due process inquiry."
Ticketmaster, 26 F.3d at 207.  In analyzing relatedness, the
First Circuit employs a "proximate cause" inquiry, with a slight
loosening where circumstances dictate.  Nowak v. Tow-Hak
Investments Ltd., 94 F.3d 708, 716 (1st Cir. 1996); Rodriguez
Salgado v. Nouvelles Esthetiques, 218 F. Supp.2d 203, 208 (D.P.R.
2002).

Christian asserts that she has satisfied the proximate cause
requirement because "the tort of libel is generally held to occur
wherever the offending material is circulated," Keeton v. Hustler
Magazine, 465 U.S. 770, 776 (1984), and she has established that
at least three copies of the book were shipped to New Hampshire.
Her evidence on this point consists of sales of single copies of
the book in New Hampshire by Borders and Amazon.com and by
Barricade's shipment of a single copy of the book to the
Dartmouth Book Store.  The two books that were actually sold in
the state, however, cannot satisfy the proximate cause
requirement because Christian does not claim that either sale
resulted in damage to her reputation.  Nor do these two sales, by
themselves, justify an inference that other injurious book sales
must have occurred in the state.  It is also difficult to see how

Barricade's shipment of a single book to the Dartmouth Book Store could satisfy the relatedness requirement because the book was unsold, uncirculated, and ultimately was returned to Barricade. Because Christian has offered no other evidence to support her claim that a significant number of books were sold in New Hampshire, I determine that she has failed to satisfy the relatedness component of the specific jurisdiction test.

## 2. Purposeful Availment

Christian also has the burden of demonstrating that Barricade's contacts with New Hampshire "represent a purposeful availment of the privilege of conducting activities in [New Hampshire], thereby invoking the benefits and protections of [its] laws and making [Barricade's] involuntary presence before [the New Hampshire-based] court foreseeable." Pritzker, 42 F.3d at 60. The purposeful availment requirement ensures that the exercise of jurisdiction over a defendant is "fair, just or reasonable" in light of its contacts with the forum state. Sawtelle, 70 F.3d at 1391. The two cornerstones of purposeful availment are voluntariness and foreseeability. Ticketmaster, 26 F.3d at 207. Christian's jurisdictional claim is unavailing because she cannot satisfy either requirement.

For Barricade's contacts with New Hampshire to be considered voluntary, they must not be the "unilateral activity of another party or a third person." Id. at 207-08 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Citing this test, Barricade argues that any New Hampshire sales of the Sharon Tate book by national book chains, wholesalers or jobbers are the unilateral acts of third parties and, therefore, cannot support a finding of personal jurisdiction. Christian claims in response that book sales by these third parties should be attributed to Barricade because it understood when it shipped copies of the book to such entities that they, in turn, would sell the book throughout the country, including in New Hampshire. Although courts in other jurisdictions have rested a finding of personal jurisdiction on a defendant's release of a product into the "stream of commerce" under circumstances that make it foreseeable that the product could cause injury in the forum state, see, e.g., Clune v. Alimak A.B., 233 F.3d 538, 542 (8th Cir. 2000), the First Circuit has rejected the "stream of commerce" theory of personal jurisdiction, see, e.g., Rodriguez v. Fullerton Tire Corp., 115 F.3d 81, 85 (1st Cir. 1997). In an effort to circumvent the First Circuit's holding, Christian cites

-10-

the fact that Barricade had "sale on return" clauses in its contracts with several of its distributors which obligated it to repurchase their unsold books. She then argues that these sale on return clauses give Barricade a sufficient interest in books sold by its distributors to justify the attribution of their New Hampshire book sales to Barricade for jurisdictional purposes. See, e.g., Gray v. St. Martin's Press, Inc., 929 F. Supp. 40, (D.N.H. 1996) (author's royalty agreement with publisher justified attribution of publisher's New Hampshire book sales to author).

While there may be cases in which the relationship between a producer and a distributor will be so close that the distributor's acts in the forum state will support a claim of personal jurisdiction over the producer, the record in this case is devoid of the kind of evidence that would justify such a finding. Christian does not claim, for example, that Barricade has an ownership interest in the national book chains, wholesalers or jobbers who distributed the book in New Hampshire. She does not argue that they were acting as Barricade's agents. Nor does she suggest that Barricade engaged in joint marketing efforts with them or otherwise exercised any control over where

-11-

they would offer books for sale.  Without such evidence, the mere existence of sale on return agreements between Barricade and its national distributors is not sufficient to satisfy the voluntariness requirement.

In addition to voluntariness, I must consider the foreseeability requirement, which dictates that "a defendant's 'conduct and connection with the forum State [must be] such that [it] should reasonably anticipate being haled into court there.'" Ticketmaster, 26 F.3d at 207 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)) (alteration in original).  As I have explained, Christian cannot satisfy the purposeful availment requirement simply by claiming that Barricade should have foreseen the possibility that copies of the Sharon Tate book might be sold in New Hampshire.  Nor is it significant that third parties actually sold two copies of the book here because those sales cannot be attributed to Barricade.  This leaves only the single unsold copy of the book that Barricade shipped to the Dartmouth Book Store to support its jurisdictional claim.  Because that book was never sold and ultimately was returned to Barricade, however, its shipment to New Hampshire could not have alerted Barricade to the possibility that it might later be

-12-

subject to suit for defamation in a New Hampshire court because of statements contained in the book.[3]

## CONCLUSION

Because I determine that Barricade has satisfied neither the relatedness nor the purposeful availment components of the specific personal jurisdiction test, I decline to analyze the reasonableness of exercising personal jurisdiction over Barricade using the "gestalt factors."[4]  See Donatelli v. National Hockey League, 893 F.2d 459, 471 (1st Cir. 1990).[5]  Defendant's motion

---

[3]  Christian expressly disclaims any reliance on the so called "effects" test of personal jurisdiction announced in Calder v. Jones, 465 U.S. 783 (1984).  See Pl's Obj. to Def.'s Mot. to Dismiss at 17.  Thus, I do not consider Calder in my analysis.

[4]  In her objection to Barricade's motion to dismiss, Christian requests that if I determine the record does not demonstrate personal jurisdiction over Barricade, I should permit her to conduct additional discovery on the jurisdictional issue. I deny her request because she has failed to explain why she could not have obtained discovery on the personal jurisdiction issue before she filed her objection to defendant's motion and, in any event, she has not persuaded me that she is likely to discover additional evidence that would support a finding of personal jurisdiction.

[5]  Christian also moves to strike Barricade's reply memorandum arguing that Barricade violated Local Rule 7.1(e)(1) because it did not file notice of its intention to file a reply within three days of the filing of Christian's objection to

to dismiss (Doc. No. 12) is granted.  The clerk of the court shall enter judgment and close the case.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 15, 2003

cc:  William L. Chapman, Esq.
     Charles C. Douglas III, Esq.

---

Barricade's motion to dismiss.  I grant Christian's motion to strike as Barricade admits it did not file the notice of intent to reply with the court within the required three-day window, despite the fact that Barricade ultimately filed the reply within the ten-day period required by the rule.  Local Rule 7.1(e)(1).

-14-