**TOKYO MARINE AND FIRE INSURANCE CO., LTD.,**
Plaintiff, Appellant,

v.

**PEREZ & CIA., DE PUERTO RICO, INC.,** Defendant, Appellee.

**TOKYO MARINE AND FIRE INSURANCE CO., LTD.,**
Plaintiff, Appellee,

v.

**PEREZ & CIA., DE PUERTO RICO, INC.,** Defendant, Appellant.

Nos. 96–2029, 96–2030.

United States Court of Appeals, First Circuit.

Heard Nov. 3, 1997.

Decided April 21, 1998.

Vanessa Viera, with whom Raymond P. Burgos, Rafael ViláCarrión and Pinto–Lugo & Rivera were on brief, for appellant.

Antonio M. Bird, Jr., with whom Bird Bird & Hestres was on brief, for appellee.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and DiCLERICO, Jr.,* District Judge.

TORRUELLA, Chief Judge.

Tokyo Marine and Fire Insurance Co., Ltd. ("Tokyo Marine"), as subrogee to the rights of its insured, Mitsubishi Motors Sales of the Caribbean, Inc. ("Mitsubishi"), filed this tort suit in diversity against defendant Pérez y Cía. de Puerto Rico, Inc. ("Pérez y Cía.") for the damage caused to vehicles owned by Mitsubishi while they were stored at a facility owned by Pérez y Cía. After holding a bench trial, the district court entered judgment finding Pérez y Cía. liable to Tokyo Marine on seven out of the eight counts in the complaint. Tokyo Marine and Pérez y Cía. now cross-appeal from the judgment of the district court. Tokyo Marine contends that the district court erred in finding that the first count of its complaint was time-barred, while Pérez y Cía. challenges the court's finding of liability. Pérez y Cía. also appeals from the district court's decision to award attorneys' fees to Tokyo Marine under P.R. R. Civ. P. 44.1 as a sanction for what it perceived as Pérez y Cía.'s obstinate conduct in this litigation. For the reasons explained below, we affirm in part and reverse in part.

## I. Background

We recite the facts in the light most favorable to the judgment. *See Wainwright Bank & Trust Co. v. Boulos*, 89 F.3d 17, 18 (1st Cir.1996).

This case involves eight shipments of cars owned by Mitsubishi that were damaged while they were stored at a harbor-side lot owned by defendant Pérez y Cía. On February 15, 1993, the M/V ORION HIGHWAY

* Of the District of New Hampshire, sitting by designation.

arrived in San Juan, Puerto Rico, and docked at a berthing facility owned by Pérez y Cía. The ship was carrying the first shipment of cars at issue in this case, which consisted of 619 Mitsubishi-brand motor vehicles consigned to Mitsubishi Motors Sales of the Caribbean, Inc. The cars were discharged and stationed on Pérez y Cía.'s lot for one week, at the end of which they were delivered to Mitsubishi. The Pérez y Cía. dock and storage lot were chosen by San Juan Mercantile Corp., Mitsubishi's agent and stevedoring contractor. San Juan Mercantile was responsible for the vehicles from the time of discharge until they were delivered to Mitsubishi.

Tokyo Marine had a working arrangement with Intermodal Transportation Services, Inc. ("Intermodal"), a Florida firm that provides survey services, whereby Intermodal surveyed vehicle damage claims presented to Tokyo Marine under the insurance policy issued to Mitsubishi. Pursuant to this arrangement, Intermodal's surveyors would conduct "hatch and discharge" surveys of vehicle shipments when they arrived at a port, and "first point of rest" surveys just after the vehicles were discharged. The purpose of these surveys was to discover any damage to the vehicles, and to determine whether such damage occurred before, during, or after the discharge of the vehicles from the ship.

After the M/V ORION HIGHWAY arrived, a local surveyor retained by Intermodal performed hatch, discharge, and first point of rest surveys of the shipment, and found the vehicles to be free of paint damage. When the vehicles were delivered to Mitsubishi a week later, however, many were found to be covered with a light dusting of paint. It was later discovered that during the week that the cars were parked at Pérez y Cía.'s lot, Pérez y Cía. employees were also painting an ocean-going barge at a drydock directly adjacent to the lot on its upwind side. After hearing evidence on the issue, the district court found that the Mitsubishi vehicles were damaged by free-floating paint that wafted onto the vehicles.

The district court also found that Mitsubishi vehicles that arrived in seven other shipments over the next year and a half were damaged in like manner while they were stored at the Pérez y Cía. lot. The district court determined that the claim based on the damage to the vehicles in the first shipment was time-barred, but allowed the claims arising from the damage to vehicles in the remaining seven shipments. With regard to those claims, the district court found that Pérez y Cía. was negligent in permitting the vehicles to be damaged because, although its employees knew of the "over spray" problem, the company took no measures to avoid or prevent the problem. The district court also found that Mitsubishi had not acted in a comparatively negligent manner by continuing to store its vehicles at the Pérez y Cía. lot because, short of stopping vehicle shipments altogether, it could not prevent the use of the Pérez y Cía. berthing and vehicle storage facilities. The district court therefore entered judgment for the plaintiff in the amount of $243,530. Finally, the district court concluded that the defendant had been obstinate in its conduct of this litigation and was therefore liable for attorneys' fees pursuant to P.R. R. Civ. P. 44.1. Both parties have appealed from the judgment below.

## II. Statute of Limitations

Tokyo Marine argues that the district court erred in finding that its claim for the damage caused to the cars in the M/V ORION HIGHWAY shipment was barred by the applicable statute of limitations. This tort action was brought under Puerto Rico's tort statute, article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141. Tort claims under article 1802 are subject to the one-year statute of limitations provided by article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2). A cause of action under article 1802 accrues—and the prescriptive period set by article 1868(2) therefore begins to run—when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor. *See Colon Prieto v. Geigel,* 115 P.R. Dec. 232, 243, 1984 WL 270950 (1984). As noted above, the district court found that the cars in the M/V ORION HIGHWAY shipment were damaged at some point no later than February 23, 1993. This

suit was filed on April 19, 1994, more than one year after the cause of action had accrued. Therefore, unless the prescription of the cause of action was interrupted, the cause of action relating to the cars in the M/V ORION HIGHWAY shipment would be time-barred.

■ Pursuant to article 1873 of the Civil Code, a prescriptive period may be interrupted in one of three ways: by the institution of an action "before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303 (official translation 1991). Although prescription is an affirmative defense, once it has been raised, the burden of proving that prescription has been interrupted shifts to the plaintiff. *See Velez Rodriguez v. Pueblo Int'l, Inc.*, 135 P.R. Dec. ——, 1994 WL 909577, at *8 (Mar. 18, 1994); *Zambrana Maldonado v. Puerto Rico*, 129 P.R. Dec. ——, 1992 WL 754996, at *4 (Jan. 30, 1992). Under article 1874 of the Puerto Rico Civil Code, the interruption of prescription against one defendant also tolls the statute against any other defendants who are solidarily liable [1] with the first. *See* P.R. Laws Ann. tit. 31, § 5304 ("Interruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors.") (official translation 1991); *Arroyo v. Hospital La Concepcion*, 130 P.R. Dec. ——, 1992 WL 755630, at *6 (June 5, 1992). Regardless of the method used, when the prescriptive period is successfully interrupted, the full period begins to run again. *See Cintron v. Puerto Rico*, 127 P.R. Dec. 582, 589, 1990 WL 710069 (1990); *Diaz De Diana v. A.J.A.S. Ins. Co.*, 110 P.R. Dec. 471, 474, 1980 WL 138494 (1980).

Neither the first nor the third method of interrupting prescription is applicable here: no suit concerning the events in question was filed before April 19, 1994, and the defendants have consistently denied liability. The issue before us is therefore reduced to the question whether the plaintiff interposed an "extrajudicial claim" with regard to the M/V ORION HIGHWAY shipment that successfully interrupted the prescription of the cause of action before the original one-year term expired on February 23, 1994.

■ The Supreme Court of Puerto Rico has often relied on a definition of "extrajudicial claim" written by Spanish commentator Luis Diez–Picazo:

In principle, claim stands for demand or notice. That is: it is an act for which the holder of a substantive right addresses the passive subject of said right, demanding that he adopt the required conduct.

Luis Diez–Picazo, *La prescripción en el Código Civil [Prescription in the Civil Code]* at 130 (Barcelona, Ed. Bosch 1964) (translation ours) (cited in *Cintron*, 127 P.R. Dec. at 592; *Secretario Del Trabajo v. Finetex Hosiery Co.*, 116 P.R. Dec. 823, 827 (1986); *Diaz De Diana*, 110 P.R. Dec. at 476). As this court has previously explained, an extrajudicial claim is subject to only a few requirements:

[A]n extrajudicial claim does in fact include virtually any demand formulated by the creditor. The only limitations are that the claim must be made by the holder of the substantive right (or his legal representative), ... it must be addressed to the debtor or passive subject of the right, not to a third party, ... and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

*Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 44 (1st Cir.1990) (citations omitted); *see Galib Frangie. v. El Vocero, Inc.*, 138 P.R. Dec. ——, 1995 WL 905884, at *3 (June 6, 1995) (enumerating requirements for extrajudicial claims). The prescriptive term is interrupted on the date on which the defendant receives the extrajudicial claim. *See Diaz De Diana*, 110 P.R. Dec. at 477.

It follows that a letter sent by a tort plaintiff to the tortfeasor, complaining of the tortious conduct and demanding compensa-

---

1. The term in the original Spanish, "obligación solidaria," is a term of art which is similar to, but not strictly synonymous with "joint and several liability." We therefore prefer to borrow the terminology used in the Louisiana Civil Code. *See* La. Civ.Code Ann. arts. 1786–1806. Although the Louisiana Civil Code is written in English, it shares a common parentage with the Puerto Rico Civil Code in that they are both derived from the Napoleonic Code. *See generally* José Trías–Monge, *El choque de dos culturas jurídicas en Puerto Rico* chs. 1, 13 (1991).

tion, is an extrajudicial claim that, if timely, interrupts the prescription of the cause of action in tort. Tokyo Marine argues that the parties involved in this suit sent each other several letters that, either separately or in conjunction, constituted extrajudicial claims that tolled the statute of limitations for the cause of action arising out of the M/V ORION HIGHWAY shipment. Because we find that one of these letters sufficed to interrupt the prescription of this cause of action, we need not consider the others.

■ On January 10, 1994, Tokyo Marine's attorneys wrote a letter to Pérez y Cía.'s insurance company, Underwriters Adjustment Co., Inc. ("UAC"), stating that:

> We have been retained by the interested cargo underwriters to effect a recovery for damage to Mitsubishi automobiles due to paint over spray on February 15, 1993. We are holding your assured, Pérez y Cía. de Puerto Rico, Inc. responsible for this loss in the amount of $369,700. The following is a breakdown of the damages:.... Kindly acknowledge receipt of this claim notice and provide us with your settlement advises.[2]

The letter was timely, was sent by persons with standing to do so,[3] and sought the same

relief subsequently claimed in this lawsuit. This letter therefore constituted an extrajudicial claim that clearly interrupted the prescription of any claims against UAC.

■ UAC, however, was never made a party to this suit. Tokyo Marine contends that the interruption of prescription with regard to its claims against UAC also tolled the statute as to its claims against Pérez y Cía. As noted above, under article 1874 of the Civil Code, the interruption of the prescription of claims against one defendant also interrupts the prescription of claims against any other defendants who are solidarily liable with the first. Accordingly, Tokyo Marine argues that UAC is solidarily liable for the damage caused by its insured, Pérez y Cía.

The concept of solidarity is defined by the provisions of Civil Code articles 1090–1101, P.R. Laws Ann. tit. 31, § 3101–12, which establish the differences between mancomunal (similar to "several") and solidary obligations. As noted before, solidarity is very similar to joint and several liability. *See supra* note 1. The essential feature of solidarity is that the solidary debtors are jointly responsible for the same obligation.[4] *See Arroyo*, 1992 WL 755630, at *1–2; *Ramos v.*

---

**2.** Plaintiff's counsel obtained UAC's address from San Juan Mercantile, which had earlier written to Pérez y Cía., giving notice of the damage to the vehicles in the M/V ORION HIGHWAY shipment and requesting the name and address of its liability insurer so that a claim could be made directly to the insurer. Pérez y Cía. wrote back, informing San Juan Mercantile that they had referred their claim to their insurance agents, and providing the agents' address and telephone number.

**3.** Tokyo Marine's attorneys are its agents and may therefore interrupt a prescriptive period for its benefit. Although we have found no reported decision directly on point, this conclusion is demonstrably correct. In order to successfully interrupt the prescription of a cause of action, an extrajudicial claim must generally be presented by the holder of the right. *See Rodriguez Narvaez*, 895 F.2d at 44; *Galib Frangie*, 1995 WL 905884, at *3. However, this requirement is not without exceptions. In particular, "[a]lthough as a general rule standing belongs to the holder of the substantive right, *the voluntary or legal representative* of the holder may formulate the claim and thus interrupt the prescription." *Finetex Hosiery*, 116 P.R. Dec. at 827 (quoting Diez–Picazo, *supra* at 130); *see also Zambrana Maldo-*

*nado*, 1992 WL 754996, at *4 (quoting *Finetex Hosiery*, 116 P.R. Dec. at 827).

**4.** For example, "[t]he actions instituted against any one of the [solidary] debtors shall prejudice all of them," "[a] creditor may sue any of the solidary debtors or all of them simultaneously," and "[t]he actions instituted against one shall not be an obstacle for those that may be brought subsequently against the others, as long as it does not appear that the debt has been collected in full." P.R. Civ. C. arts. 1094, 1097, P.R. Laws Ann. tit. 31, §§ 3105, 3108. Similarly, "[t]he payment made by any of the [solidary] debtors extinguishes the obligation," and "[t]he person who made the payment can only claim from his codebtors the shares pertaining to each one with interest on the amounts advanced." P.R. Civ. C. art. 1098, P.R. Laws Ann. tit. 31, § 3109. To prevent the creditor and some of the debtors from colluding against the other debtors, the Code also provides that "[t]he waiver or remission made by the creditor of the part affecting one of the [solidary] debtors does not release the latter from his liability with regard to his codebtors in case the debt should have been paid in full by any of them." P.R. Civ. C. art. 1099, P.R. Laws Ann. tit. 31, § 3110.

*Caparra Dairy, Inc.*, 116 P.R. Dec. 60, 62–63, 1985 WL 301268 (1985).

However, solidarity does not presuppose that the scope or source of liability is identical for each solidary debtor. To the contrary, "[s]olidarity may exist, even though the creditors and debtors are not bound in the same manner, and for the same periods and under the same conditions." P.R. Civ. C. art. 1093, P.R. Laws Ann. tit. 31, § 3104. More generally, the entire set of provisions regarding solidary obligations recognizes that solidary debtors may be obligated to different degrees; thus the reference to shares. The same principle is implicit in P.R. Civ. C. art. 1101, which provides "[a] solidary debtor may utilize, against the claim of the creditor, all the exceptions arising from the nature of the obligation and those which are personal to him." P.R. Laws Ann. tit. 31, § 3112. After all, personal exceptions are precisely those not shared by the other solidary debtors.

One of the "secondary" consequences of categorizing an obligation as solidary rather than mancomunal is that the rules regarding the interruption of prescription are different. *See Arroyo*, 1992 WL 755630, at *5. Specifically, the "[i]nterruption of prescription of actions in joint obligations equally benefits or injures all the creditors or debtors," while "in [mancomunal] obligations, when the creditor does not claim from one of the debtors more than the part pertaining to him, prescription is not interrupted for that reason with regard to the other co-debtors." P.R. Civ. C. art. 1874. The reason for the difference is that solidarity is based on the theory that there is one obligation, shared by several debtors. *See Arroyo*, 1992 WL 755630, at *5. The interruption of the prescription of the cause of action based on that unitary obligation therefore need only be performed once.

There are two sources of solidarity: contract and statute. *See Arroyo*, 1992 WL 755630, at *2–3 & n. 3 ("Solidarity exists by the will of the parties or by law.") (translation ours). The provisions cited above apply equally to both contractual and statutory solidarity; the only difference between them is that while contractual obligations are presumed not to be solidary unless there is an express agreement to the contrary, *see* P.R. Civ. C. art. 1090, statutory solidarity operates without regard to the parties' consent to be so bound with each other, *see Arroyo*, 1992 WL 755630, at *3 (holding that joint tortfeasors are solidarily liable).

Tokyo Marine has not argued that UAC and Pérez y Cía. expressly agreed to be solidarily liable to any persons injured by Pérez y Cía. The question is therefore whether the liability of an insurer for the harm caused by its insured can be described as solidary liability. In order to answer this question, we look to the only case in which the Supreme Court of Puerto Rico has explicitly held that a statute had imposed a variety of solidary liability. *See Arroyo*, 1992 WL 755630. In that case, the Puerto Rico Supreme Court concluded that joint tortfeasors are solidarily liable, even though P.R. Civ. C. art. 1802 does not explicitly mention solidarity. *See id.* at *4. The Puerto Rico Supreme Court based its conclusion on the nature and scope of tort liability. Under article 1802, when the negligent acts of more than one person have adequately caused a harm, each such person is a joint tortfeasor who is liable in full to the plaintiff for the harm caused.[5] The Puerto Rico Supreme Court found that the relationship between the liabilities of joint tortfeasors was indistinguishable from the contractual solidarity described in P.R. Civ. C. art. 1090 because joint tortfeasors, like contractual solidary debtors, are jointly liable for the same obligation. *See* P.R. Laws Ann. tit. 31, § 3101; *Arroyo*, 1992 WL 755630, at *4. The Puerto Rico Supreme Court therefore held that article 1874 of the Civil Code applies to joint tortfeasors, so that the timely filing of a suit against

---

5. Under P.R. Civ. C. art. 1802, a person is liable for the harm he or she may have negligently caused. In order for liability to attach, the negligent act must be the "adequate cause" of the harm. Adequate cause, a concept similar to proximate cause, permits more than one person to be found to have "caused" the harm. *See*

*Ortiz Torres v. K & A Developers, Inc.*, 136 P.R. Dec. ——, 1994 WL 909260, at *3 (May 25, 1994); *Sociedad De Gananciales v. Gonzalez Padin*, 117 P.R. Dec. 94, 1986 WL 376809 (1986); *Jimenez v. Pelegrina Espinet*, 112 P.R. Dec. 700, 1982 WL 210615 (1982); *see also Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987).

one joint tortfeasor had interrupted the prescription of the suit against the other tortfeasors. *See Arroyo*, 1992 WL 755630, at *5.

■ Applying the analysis employed in *Arroyo*, we conclude that the Puerto Rico Supreme Court would hold that insured defendants and their insurance companies are solidarily liable for the acts of the insured. The Puerto Rico Insurance Code specifies the nature and extent of a liability insurer's responsibility for the damage caused by its insured. In particular, article 20.010 of the Insurance Code makes liability insurers *absolutely liable* to persons injured by their insured. *See* P.R. Laws Ann. tit. 26, § 2001.[6] Article 20.010 must be read in conjunction with article 20.030, according to which an injured party may bring an action directly against the tortfeasor's liability insurer, or against both the tortfeasor and the insurer. *See* P.R. Laws Ann. tit. 26, § 2003.[7] Admittedly, article 20.030 does not state explicitly that tortfeasors and their insurers are liable *in solido*, which raises the possibility that the Puerto Rico Legislature did not intend to make them so. But then, P.R. Civ. C. art. 1802 does not explicitly mention solidarity, either. As in the case of joint tortfeasors, the liability imposed by the Insurance Code upon insurers is co-extensive with that of their insured, up to the limits of the policies in question.

Moreover, the fact that the statutory sources of liability for a tortfeasor and its insurer are different does not prevent their liabilities from being solidary. As noted above, "[s]olidarity may exist, even though the creditors and debtors are not bound in the same manner, and for the same periods and under the same conditions." P.R. Civ. C. 1093.

Our conclusion that an insurer and its insured are solidarily liable is bolstered by the Puerto Rico Supreme Court's determination that a suit against an insurer may be filed up to one year after judgment is entered in a suit against the insured. *See Barrientos v. Gobierno De La Capital*, 97 P.R. Dec. 552, 576–77, 1969 WL 21597 (1969) (interpreting P.R. Ins. C. art. 20.030(2)). The holding in *Barrientos* is consistent with our conclusion; as we noted above, one of the secondary consequences of solidarity is that the interruption of prescription as to one solidary debtor affects the other solidary debtors, *see* P.R. Civ. C. art. 1874, so that a suit against one joint tortfeasor may be filed up to one year after judgment is entered in a suit against another joint tortfeasor, *see Arroyo*, 1992 WL 755630, at *5.

While the Puerto Rico Supreme Court has not decided this issue, three justices have addressed it in dicta. All agree with our conclusion.[8] For example, in an opinion dis-

---

**6.** Article 20.010 provides:

The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, *shall become absolutely liable whenever a loss covered by the policy occurs*, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured or upon any final judgment against him arising out of such occurrence.

P.R. Laws Ann. tit. 26, § 2001 (official translation 1976) (emphasis added).

**7.** Article 20.030 provides, in pertinent part:

(1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly.... The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine,

not only the liability of the insurer, but also the amount of the loss.

(2) If the plaintiff in such an action brings suit against the insured alone, such shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.

P.R. Laws Ann. tit. 26, § 2003 (official translation 1976).

**8.** At least two commentators have also argued that a tortfeasor and its insurance company are solidarily liable to the victim. *See* Herminio M. Brau del Toro, *El Término Prescriptivo y su Interrupción en Acciones en Daños por Responsabilidad Extracontractual Solidaria en el Derecho Puertorriqueño*, [*The Prescriptive Term and its Interruption in Tort Actions Involving Solidary Liability in the Law of Puerto Rico* ], 44 Rev. Col. Ab. P.R. 203, 243 (1983); Luis R. Puerta–Luis, *La Solidaridad del Responsable Civil y de su Aseguradora Frente al Perjudicado* [*The Solidarity of the Civil Defendant and its Insurer Before the Injured*

senting on a different issue, Associate Justice Rebollo explicitly stated that, "[a]s is well-known, an insurance company ... is solidarily liable for the negligent acts that its insured may commit." *Torres v. Puerto Rico,* 130 P.R. Dec. ——, 1992 WL 755617, at *2 (June 8, 1992) (translation ours). Similarly, Associate Justice Naveira de Rodón noted in her concurrence in another case that the defendants therein—a leasing company, its insurance company, and the lessor-driver— were solidarily liable for injuries resulting from the driver's negligence. *See Marrero–Albino v. Vázquez–Egean,* 135 P.R. Dec. ——, 1994 WL 909230, at *2 (Feb. 24, 1994). In an opinion dissenting on other grounds in that same case, Associate Justice Fuster–Berlingeri also wrote that "there is no doubt whatsoever as to the solidarity existing between the tortfeasor, ... the company that owned the vehicle that he was driving, and its insurer." *Marrero–Albino,* 1994 WL 909232, at *5. As Justice Fuster explained, "in light of the clear literal sense and purposes served by [P.R. Ins. C. art. 20.010], it is necessary to conclude that, with regard to the plaintiff's claim, the three defendants ... were equally situated from a legal point of view, as if they were one party with regard to the claim made by the plaintiff." *Id.*

More oblique support for this conclusion is found in *Miranda v. Puerto Rico,* 137 P.R. Dec. ——, 1994 WL 908883, at *6 (Dec. 7, 1994), in which the Puerto Rico Supreme Court affirmed the trial court's judgment, which, among other things, held the defendants and their insurance companies to be solidarily liable for the award of damages. Similarly, in *Trigo v. the Travelers Insurance Co.,* 91 P.R. Dec. 868, 1965 WL 14346 (1965), the Puerto Rico Supreme Court reversed a trial court's determination that a claim against the insurer was time-barred, even though the plaintiff had made a timely extra-judicial claim against it. Since the trial court reasoned that the interruption of prescription against the insurer had not interrupted pre-

scription against the insured, the Puerto Rico Supreme Court could be understood to have disapproved of the trial court's implicit determination that the insured was not liable *in solido* with its insurer. *Cf. Neptune Packing Corp. v. The Wackenhut Corp.,* 120 P.R. Dec. 283, 289, 1988 WL 580867 (1988) (stating that claims against insurer and insured should generally be brought in the same suit rather than separately).

The handful of cases that could be read to support the opposite conclusion—that defendants and their insurers are not solidarily liable—appear to us to be less compelling. For example, in *Velilla v. Pueblo Supermarkets, Inc.,* 111 P.R. Dec. 585, 1981 WL 176460 (1981), the plaintiff-appellant had originally communicated with the defendant, Pueblo Supermarkets. Pueblo, however, referred the plaintiff to International Claims Investigators, Inc., an independent insurance adjuster. When, more than a year afterwards, the plaintiff filed suit against Pueblo, Pueblo moved for and obtained dismissal of the suit on the basis that the cause of action was barred by the statute of limitations because the insurance adjuster was not its agent.[9] The Supreme Court reversed, but *not* because the claims made against the insurer had simultaneously interrupted prescription as to Pueblo. Instead, the Supreme Court merely held that Pueblo was equitably estopped from raising the time-bar defense. Although one could read the choice of rationale as a suggestion that the claim against the insurer does *not* simultaneously interrupt prescription as to the insured, we find the inference weak because there were other, more likely reasons why the court decided as it did.

Furthermore, our conclusion is consistent with the history and purpose of P.R. Ins. C. arts. 20.010 and 20.030, which were intended to reverse by statute a number of decisions of the Puerto Rico Supreme Court. In *Cruz Nieves v. Gonzalez,* 66 P.R. Dec. 212, 1946 WL 6440 (1946), the plaintiff had timely filed

---

Party ] at 225–26 (Ed. Montecorvo, S.A., Madrid, 1977); *but see* José Julián Alvarez–González, *Responsabilidad Extracontractual [Tort Liability ],* 62 Rev. Jur. U.P.R. 903, 907–08 n. 18 (1993) (arguing that a tortfeasor and its insurance company are not solidarily liable).

9. As a matter of Puerto Rico law, insurance adjusters represent the interests of the insurer rather than the insured. *See* P.R. Ins. C. art. 9.050, P.R. Laws Ann. tit. 26, § 905(2).

an extrajudicial claim with the defendant's insurance company, but did not file suit against the defendant until more than a year after the accident. When the defendant raised the failure to file suit within the one year period required by P.R. Civ. C. art. 1868, the plaintiff countered that the prescription of her action against the defendant had been interrupted by the extrajudicial claim against the insurance company because the two were solidarily liable.

At issue in *Cruz Nieves* was article 175 of the former Insurance Law of Puerto Rico (predecessor to the current Insurance Code), which permitted a plaintiff to file a claim against an insurance company *jointly* with the insured. In the court's view, an insurance company was liable under article 175 only if its insured were found liable. The court accepted for purposes of argument the plaintiff's contention that the insurance company was directly liable to her and therefore that her extrajudicial claim against the company interrupted the prescription of her claim against the company. Nevertheless, since the claim against the defendant was barred by the statute of limitations, the insurance company could not be liable. Based on this transparently circular reasoning, the court rejected her argument and affirmed the dismissal of her complaint. Noting that "solidarity is not presumed, nor does it exist unless it has been expressly agreed to," the court also concluded that the liability of the defendant and its insurance company could not be solidary because the complaint had not alleged that the insurance contract had expressly provided that the insurance company would be directly liable to third parties. *Id.* at 214.

One year later, the Puerto Rico Supreme Court expressly rejected the claim that it had accepted for purposes of argument in *Cruz Nieves;* namely, the argument that an insurance company was directly liable to a person injured by its insured. *See United States Cas. Co. v. Corte De Distrito De Arecibo*, 66 P.R. Dec. 937, 939, 1947 WL 7463 (1947). The court held that article 175 of the Puerto Rico Insurance Law did not create a cause of action against an insurer. The court explained that article 175 authorized a claim

against an insurer only when the plaintiff had already obtained a judgment against the insured defendant, or when the insurer had been named a party to the same suit as the insured. *See id.* Based on its decisions in *Cruz Nieves* and *United States Casualty Co.*, the Puerto Rico Supreme Court subsequently held that the extrajudicial claim made to the insurer within the one-year prescriptive period did not interrupt the prescription of the claim against the insured. *See Bithorn Huicy v. Santana*, 68 P.R. Dec. 300, 306, 1948 WL 6750 (1948); *see also Guerra v. Ortiz*, 71 P.R. Dec. 613, 624, 1950 WL 7228 (1950); *Autoridad De Las Fuentes Fluviales v. Irizarry*, 72 P.R. Dec. 644, 650, 1951 WL 7615 (1951).

As the Puerto Rico Supreme Court noted several years later, the excessively technical interpretation of the law adopted in this series of cases placed a number of frustrating roadblocks in the way of injured persons who sought compensation from the insurers of the persons who injured them. *See Trigo v. the Travelers Ins. Co.*, 91 P.R. Dec. 868, 871, 1965 WL 14346 (1965). It was no coincidence, surmised the *Trigo* court, that the Legislative Assembly of Puerto Rico amended article 175 in 1952 to allow plaintiffs the option of suing insurance companies either directly, or jointly with the insured. *See Act No. 60 of April 17, 1952. By permitting a direct suit against an insurer, the amended section 175 seemed to establish a separate, direct cause of action against insurers.

That interpretation of the amendment, however, was rejected in *Perez v. Maryland Casualty Co.*, 78 P.R. Dec. 475, 1955 WL 11571 (1955). In *Perez*, Associate Justice Snyder (the author of the court's opinion in *Bithorn Huicy*) wrote for the court that the 1952 amendment was merely procedural, permitting a suit to go forward even when the insured was not amenable to service of process. The court held that the amendment had not created a direct cause of action against insurers, such as the one provided by Louisiana law, because a plaintiff still had to prove that the insured was liable. *See id.* at 480 & n. 3 (citing La.Rev.Stat. Ann. tit. 22, § 655); *see also Landol v. Colon*, 78 P.R. Dec. 602, 1955 WL 11555 (1955) (following

*Perez*); *but see Aponte v. American Surety Co.*, 276 F.2d 678 (1st Cir.1960) (holding that 1952 amendment created new direct cause of action against insurers).

As the *Trigo* court remarked, the *Perez* opinion rendered the 1952 amendment effectively irrelevant. *See* 91 P.R. Dec. at 873. In 1957, however, the old insurance law was repealed and replaced by the current Insurance Code. *See* Act No. 77 of June 19, 1957, P.R. Laws Ann. tit. 26. The new code contained a number of provisions, particularly articles 20.010 and 20.030, that clearly established a direct cause of action against insurers. *See Trigo*, 91 P.R. Dec. at 874. It is evident that the enactment of P.R. Ins. C. arts. 20.010 and 20.030 was intended to reverse the Puerto Rico Supreme Court's decisions in *Cruz–Nieves, United States Casualty Co., Bithorn Huicy, Guerra, Autoridad De Las Fuentes Fluviales, Perez*, and *Landol*. Since these cases held, among other things, that an insurer and its insured were not solidarily liable, their reversal supports (although, admittedly, does not compel) the conclusion that the direct liability newly imposed upon insurers is solidary with the liability of their insured.

The court also noted in *Trigo* that P.R. Ins. C. art. 20.030 uses "language [that is] very similar to the one in the Louisiana legislation to which we made reference in the *Perez* case, which makes the insurer substantively and directly responsible" for the harm caused by its insured. *Trigo*, 91 P.R. Dec. at 874 (translation ours). Under Louisiana law, the insurer and the insured are joint and solidary obligors, and, thus, a suit against the insurer interrupts prescription against the insured. *See Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982); *Pearson v. Hartford Accident & Indemn. Co.*, 281 So.2d 724, 726–27 (La.1973); *Tuck v. Commercial Standard Ins. Co.*, 164 So. 472 (La.App.Ct.1935); *see also Cormier v. Clemco Servs. Corp.*, 48 F.3d 179 (5th Cir.1995); *McDermott v. Crown Zellerbach Corp.*, 418 F.2d 598 (5th Cir.1969); *Melancon v. The Travelers Ins. Co.*, 209 F.Supp. 68 (W.D.La. 1962); *see generally* H. Alston Johnson, *The Louisiana Direct Action Statute*, 43 La. L.Rev. 1455, 1506–14 (1983). It is reasonable to conclude that in adopting a rule based on Louisiana law, the Puerto Rico Legislative Assembly intended for the rule to be interpreted in a similar manner. *See Garcia* v. *Northern Assurance Co.*, 92 P.R. Dec. 245, 250–53, 1965 WL 14310 (1965) (relying on Louisiana case law in order to interpret P.R. Ins. C. art. 20.030 because it was derived from Louisiana law).

In sum, we conclude that an insured defendant is solidarily liable with its liability insurance company. Thus, the timely interruption of prescription as to UAC had a like effect as to its insured, Pérez y Cía. *See* P.R. Civ. C. art. 1874, P.R. Laws Ann. tit. 31, § 5304. Accordingly, we find that the district court erred in dismissing as time-barred Tokyo Marine's cause of action based on the damage to the vehicles in the M/V ORION HIGHWAY shipment.[10]

In the normal course of events, we would remand this case for further proceedings. In this case, however, the district court had

---

**10.** Our conclusion is subject to an important caveat, however. Our analysis has been aimed only at determining whether the prescriptive period was interrupted by the letter received by UAC in January 1994. In order to do so, we asked whether the liability of insurers, as established by the Insurance Code, should be categorized as solidary liability. Our task was therefore descriptive, not prescriptive, and our holding does not change the substantive liability of insurers. In particular, this means that a liability insurer is *not* solidarily liable when the loss is not covered by the insurance agreement. *See* P.R. Ins. C. art. 20.010, P.R. Laws Ann. tit. 26, § 2001 (insurer is liable whenever a *covered* loss occurs). Similarly, the plaintiff's direct action against the insurer is subject to "the terms and limitations of the policy." P.R.

Ins. C. art. 20.030, P.R. Laws Ann. tit. 26, § 2003.

Thus, in a case in which the prescriptive period has been interrupted by notifying an alleged tortfeasor's insurer, and suit is then brought against the insured after the original prescriptive period would have run, a subsequent motion for summary judgment filed by the defendants would succeed if the uncontroverted evidence showed that the loss was not covered. This is no different from a case involving allegations that the defendants are joint tortfeasors; if the evidence later demonstrates that the only defendant against whom interruption was properly made was not, in fact, a joint tortfeasor, then the interruption was not effective against the other defendants. *See Arroyo*, 1992 WL 755630, at *6.

already made a finding as to amount of the damages to the vehicles in the M/V ORION HIGHWAY shipment, setting the finding aside only because the court determined that the claim was time-barred. Specifically, the district court found that the damages accruing under such claim amounted to $90,500. We therefore amend the judgment for Tokyo Marine to increase its award by $90,500, for a total of $334,030.

### III. Finding of Liability and Award of Damages

 Pérez y Cía. raises on appeal a number of arguments as to why the district court's findings of liability and award of damages were erroneous. In particular, Pérez y Cía. contends that the district court erred in determining that Pérez y Cía. caused the paint damage to the cars, in failing to determine that the docking permit application absolved it of any liability for damage to the vehicles, in failing to determine that Tokyo Marine's insured, Mitsubishi, was comparatively negligent in failing to mitigate damages, and in assessing special damages. All of these arguments, except for the one concerning interpretation of the docking permit application, are challenges to the district court's findings of fact. We review such findings only for clear error, see Fed.R.Civ.P. 52(a), and find such error only where we are firmly convinced that a mistake has been made, see *Strahan v. Coxe*, 127 F.3d 155, 172 (1st Cir.1997).

After reviewing the evidence, we conclude that the district court's findings of liability and damages were not clearly erroneous. There was evidence before the court supporting its conclusions that the ship painting operations caused the damage to the cars, that there was no alternative location where Mitsubishi could have stored the vehicles, and that Mitsubishi mitigated damages by promptly restoring the vehicles to their original condition, thereby preventing further damages such as decreased sales. Similarly, there was evidence to support the court's finding that the amounts paid by Mitsubishi to Professional Car Paint, the company that repaired the vehicles, were reasonable.

 Pérez y Cía. had also argued that liability was foreclosed by clause 9 of the docking permit application, which stated that "Pérez assumes no responsibility for the safety of the cargo or equipment handled by the applicant ... while this cargo is being handled or in storage in the facilities of Pérez." Under Puerto Rico law, however, such release clauses are interpreted against exoneration because releases from liability for future negligent conduct are not favored. *See Cabrera v. Doval*, 76 P.R. Dec. 777, 781, 1954 WL 10805 (1954). Thus, such a clause will release a party from liability for future negligence only where the clause clearly and explicitly states so. We agree with the district court that clause 9 did not meet this standard.

### IV. Award of Attorneys' Fees

 Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure require trial courts to award attorney's fees and interest against parties that have litigated "obstinately or frivolously." P.R. Laws Ann. tit. 32, app. III R. 44.1(d), 44.3(b).[11] "The purpose behind the rules is to penalize 'a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation.'" *Dopp v. Pritzker*, 38 F.3d 1239, 1253 (1st Cir.1994) (quoting *Fernandez v. San Juan Cement Co.*, 118 P.R. Dec. 713, 718, 1987 WL 448327 (1987)). The district court below found that Pérez y Cía.

11. P.R. R. Civ. P. 44.1(d) provides, in pertinent part:
In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct. P.R. Laws Ann. tit. 32, app. III R. 44.1(d) (official translation 1984 & Supp.1989). In turn, Rule 44.3(b) provides:

[T]he court will ... impose on the party that has acted rashly the payment of interest ... from the time the cause of action arises in every case of collection of money and from the time the claim is filed in actions for damages until the date judgment is pronounced.. P.R. Laws Ann. tit. 32, app. III R. 44.3(b) (official translation).

had been obstinate in this litigation and was therefore liable for attorneys' fees. Reviewing this determination for abuse of discretion, *see Dopp*, 38 F.3d at 1253, we find none.

The decision of the district court is *affirmed* in part, *reversed* in part, and *amended* as to damages, as discussed above. Costs are awarded to the plaintiff.