**Trade Wings v. Technetics, Inc.**       CV-02-169-B   10/10/02

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Trade Wings, LLC**

    **v.**                                     Civil No. 02-169-B
                                          Opinion No. 2002 DNH 182

**Technetics, Inc. d/b/a**
**SMTEK San Diego**


### MEMORANDUM AND ORDER


Trade Wings, LLC ("Trade Wings"), filed this civil action in New Hampshire Federal District Court, claiming that Technetics, Inc., d/b/a/ SMTEK ("SMTEK"), breached contractual duties to Trade Wings. In addition, Trade Wings claims that SMTEK breached both an express warranty and the implied warranty of merchantability; breached the covenant of good faith and fair dealing; and violated the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. ch. 358-A (1995 & Supp. 2001). SMTEK has moved to dismiss the action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons noted below, I deny the motion to dismiss.

# I.  BACKGROUND[1]

Trade Wings is a New Hampshire company, with its headquarters in Portsmouth, New Hampshire.  Trade Wings is in the business of locating, purchasing, and reselling electronic components.  SMTEK is a corporation wholly owned by SMTEK International, a Delaware corporation, which has its headquarters in California and offices all over the world, including one in Massachusetts.  SMTEK manufactures customized electronic hardware.

In March of 2001, Trade Wings contacted SMTEK concerning a possible commercial relationship in which Trade Wings would buy and resell SMTEK's excess inventory and, in turn, also become SMTEK's "premier supplier" of electronic components.  In April of 2001, Trade Wings' Vice-President of Sales, Edward Latham, traveled to California where he met with SMTEK's then president, Michael Perry, and other SMTEK representatives.  After this meeting, Trade Wings and SMTEK began to negotiate the terms and conditions of a contract.

---

[1] The background facts are drawn from the parties' evidentiary submissions and are considered in the light most favorable to the plaintiffs.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

Negotiations between Trade Wings and SMTEK took place during a series of telephone calls, facsimiles, and e-mails that were sent between New Hampshire and California. Drafts of the contract were sent between New Hampshire and California. In the body of an e-mail, to which a draft of the contract was attached, SMTEK's Perry wrote "I am looking forward to developing a long-term mutually beneficial relationship."

Trade Wings executed a Letter of Agreement ("LOA") at its headquarters in New Hampshire and faxed it to SMTEK in California. SMTEK, in turn, executed the LOA and returned it to New Hampshire. The LOA contemplated a year-long relationship in which Trade Wings was to "purchase and take delivery" of excess electronic components owned by SMTEK. Instead of obtaining payment for the goods immediately, SMTEK took a trade credit against future purchases of components from Trade Wings. The LOA stated that Trade Wings would become one of SMTEK's premier suppliers and SMTEK would use its "best efforts" to purchase materials from Trade Wings.

On May 14, 2001, Trade Wings issued its first purchase order to SMTEK in the amount of $873,044.60. This purchase order contained a clause stating that the order is "[b]ased upon all

materials being unused, in original tubes and/or packaging." The clause further stated that "[p]rogrammable devices shall never have been programmed." After receiving the order, SMTEK shipped the electronic components to Trade Wings' Portsmouth, New Hampshire location. Trade Wings notified SMTEK immediately after discovering that a substantial portion of the electronic components were pre-programmed in violation of the purchase order. SMTEK ran independent tests on the components and agreed that the parts were in fact pre-programmed. At that time, SMTEK and Trade Wings had multiple communications concerning the pre-programmed components.

Trade Wings continued to contact representatives of SMTEK, requesting information on their material needs in order to provide them with price quotations. SMTEK, over a span of four months, placed fourteen purchase orders with Trade Wings in New Hampshire, totaling over $650,000.

On June 21, 2002, SMTEK filed a complaint against Trade Wings in the Superior Court of California for non-payment of goods. Less than a week later, SMTEK was served by mail with the complaint for this action.

SMTEK maintains that its only contacts with New Hampshire stem from its relations with Trade Wings and that these contacts are not sufficient for this court to maintain jurisdiction.

## II. **STANDARD OF REVIEW**

When personal jurisdiction is contested, the plaintiff bears the burden of showing that such jurisdiction exists. See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 n.9 (1st Cir. 1994). Where, as is the case here, I have not held an evidentiary hearing, a plaintiff need only make a prima facie showing that the court has personal jurisdiction over the defendants. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing United Elec., Radio, & Mach. Workers v. 163 Pleasant Street Corp., 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter Pleasant Street. II]).

In meeting the prima facie standard, Trade Wings must submit "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Prods. Inc., 967 F.2d 671, 675 (1st Cir. 1992); see Pleasant Street. II, 987 F.2d at 44. Trade Wings must not rest on the

pleadings.  See id.  Supporting evidence must be based on evidence of specific facts set forth in the record.  See id.  I take the specific facts alleged by the plaintiff, both disputed and undisputed, as true and construe them in a light most favorable to the plaintiff's claim.  See Mass. Sch. of Law, 142 F.3d at 34; Ticketmaster, 26 F.3d at 203.  I will also consider facts put forward by SMTEK to the extent that they are uncontradicted.  See Mass. Sch. of Law, 142 F.3d at 34.  While the prima facie standard is a liberal one, the law requires that I not "credit conclusory allegations or draw farfetched inferences."  Mass. Sch. of Law, 142 F.3d at 34; (quoting Ticketmaster, 26 F.3d at 203).

## III.  ANALYSIS

For this court to have personal jurisdiction over SMTEK, I must find the contacts between SMTEK and New Hampshire sufficient to satisfy both the New Hampshire long-arm statute and the due process clause of the Fourteenth Amendment.  See Sawtelle, 70 F.3d at 1387.  The long-arm statute that applies here permits the exercise of jurisdiction over unregistered foreign corporations to the full extent permitted under the federal due process

standard.  See N.H. Rev. Stat. Ann. § 293-A:15 (1999); Sawtelle, 70 F.3d at 1388.  As such, the traditional two-part analysis for personal jurisdiction merges into a single analysis of whether the requirements of the due process clause have been met.  See id., accord McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994).

The purpose of the due process analysis is to ensure "fundamental fairness" by requiring defendants to have certain minimum contacts with the forum state.  See Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945); Sawtelle, 70 F.3d at 1388; Ticketmaster, 26 F.3d at 206.  Under the Due Process Clause, this court will not assert jurisdiction over SMTEK unless its "[c]onduct and connection with [New Hampshire] are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This determination is fact-sensitive and necessarily involves "[a]n individualized assessment and factual analysis of the precise mix of contacts that characterize each case."  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

A court may assert personal jurisdiction over a defendant under a theory of either general or specific jurisdiction.  Here,

Trade Wings argues only that the court has specific jurisdiction. A court has specific jurisdiction over a defendant if there is "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Mass. Sch. of Law, 142 F.3d at 34. The First Circuit utilizes a three-part test to determine whether the defendant's contacts are sufficient to give rise to specific jurisdiction. This test considers: (1) relatedness; (2) purposeful availment; and (3) reasonableness. Sawtelle, 70 F.3d at 1388-89.

1. Relatedness

The first consideration is whether Trade Wings' claim underlying this litigation "[d]irectly arises out of, or relates to," SMTEK's New Hampshire activities. Id.; Ticketmaster, 26 F.3d at 206. In contract cases, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999); see Mass. Sch. of Law, 142 F.3d at 35 (formation of contract). SMTEK claims that it was a passive party to the formation of the contract and, therefore, its participation in

-8-

contract negotiations cannot satisfy the relatedness requirement. This is not the case. SMTEK negotiated with Trade Wings through phone calls, faxes, and e-mails directed to New Hampshire. SMTEK's Perry sent numerous drafts of the LOA to Trade Wings' New Hampshire office. Perry then executed the LOA and faxed it to New Hampshire. These contacts were instrumental in the formation of the LOA.

In addition to SMTEK's contacts concerning the formation of the LOA, its alleged breach of contract arose from its contacts with New Hampshire. First, SMTEK sent the allegedly non-conforming goods to Trade Wings in New Hampshire. Second, SMTEK directed a series of telephone calls and e-mails to Trade Wings in Portsmouth, New Hampshire, after the alleged breach. Because the contract that represents SMTEK's contacts with New Hampshire is the very cause and object of the litigation here, the relatedness requirement is fulfilled. Pritzker, 42 F.3d at 61.

2. Purposeful Availment

I next determine whether SMTEK's contacts with New Hampshire "represent a purposeful availment of the privilege of conducting activities in New Hampshire, thereby invoking the benefits and protections of [its] laws and making SMTEK's involuntary presence

before [the New Hampshire-based] court foreseeable." Id. The function of this second prong of the specific jurisdiction test is to ensure that SMTEK's contacts are not "random, isolated, or fortuitous contacts with the forum state." Sawtelle, 70 F.3d at 1391 (internal quotation omitted). Instead, to satisfy the purposeful availment requirement, SMTEK must have "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable." Id. (citing Rush v. Savchuk, 444 U.S. 320, 329 (1980). The two factors I must consider are voluntariness and foreseeability. See Sawtelle, 70 F.3d at 1391; Ticketmaster, 26 F.3d at 207.

Voluntariness, at a minimum, requires that SMTEK's contacts with the forum must not be the result of "unilateral activity of another party or a third person." Ticketmaster, 26 F.3d at 207-08 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). SMTEK argues that it did not purposefully avail itself of the privilege of conducting business in New Hampshire because its contacts with the forum were "isolated" and "instigated solely by activities of [Trade Wings]. . . ." However, Trade Wings asserts, and SMTEK does not dispute, that SMTEK directed numerous communications to Trade Wings' offices in New Hampshire

-10-

both during the negotiation process and after the parties executed the LOA.

SMTEK also voluntarily shipped electronic components to New Hampshire. Once Trade Wings discovered that the electronic components had been pre-programmed, SMTEK again sent various communications to Trade Wings in New Hampshire. SMTEK also sent over fourteen purchase orders to Trade Wings' Portsmouth location. These purchase orders spanned a four-month period and totaled over $650,000. SMTEK therefore cannot claim that the contacts it had with New Hampshire were a product of involuntary coercion merely because Trade Wings initiated negotiations with SMTEK.

When evaluating the issue of purposeful availment, I also must determine whether it was foreseeable to SMTEK that it might be haled into a New Hampshire court. World-Wide Volkswagen, 444 U.S. at 297; Sawtelle, 70 F.3d at 1393; Ticketmaster, 26 F.3d at 207. In the LOA, SMTEK agreed to at least a year-long commitment with Trade Wings. In addition, SMTEK's Perry wrote in an e-mail to Trade Wings in New Hampshire that he was "[l]ooking forward to developing a long-term mutually beneficial relationship." SMTEK clearly did not intend for its contacts with New Hampshire to be

limited to an isolated shipment of goods.  Instead, SMTEK foresaw a long-term relationship which did in fact span several months. SMTEK's numerous contacts with Trade Wings in New Hampshire thus easily satisfy the purposeful availment component of the personal jurisdiction test.

3. <u>Reasonableness</u>

The third prong of the specific jurisdiction test is whether it is reasonable to exercise jurisdiction over SMTEK in light of the gestalt factors.  <u>Sawtelle</u>, F.3d at 1389, 1394; <u>accord</u> <u>Foster-Miller</u>, 46 F.3d at 151; <u>Ticketmaster</u>, 26 F.3d at 209.  The First Circuit has identified five gestalt factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  <u>See</u> <u>id.</u>

a. <u>Burden of Appearing</u>

SMTEK's headquarters are located in California.  It would be more convenient for SMTEK to litigate in California as opposed to New Hampshire, a foreign jurisdiction.  However, the ordinary

inconvenience that SMTEK may confront in litigating in a foreign jurisdiction is not sufficient to tip this factor in favor of a finding of unreasonableness. A defendant must "demonstrate a special or unusual burden" before this factor weighs against jurisdiction. Pritzker, 42 F.3d at 64; accord Sawtelle, 70 F.3d at 1395. SMTEK argues that its' burden is special because potential key witnesses will be leaving SMTEK's employment within the next month. SMTEK states that because of these departures, it will not be able to compel the attendance of their former employees in New Hampshire on SMTEK's behalf. Based on my assessment of the other gestalt factors, however, this factor alone, although it may weigh in favor of SMTEK, is insufficient to deny Trade Wings the opportunity to litigate its claims in this district. See Ticketmaster, 26 F.3d at 210.

b. Forum State's Adjudicatory Interest

The First Circuit has emphasized that "[t]he purpose of [this] factor is not to *compare* the forum's interests to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." Sawtelle, 70 F.3d at 1395 (citing Foster-Miller, 46 F.3d at 151) (alteration and emphasis in original). New Hampshire has a strong interest in adjudicating a

breach of contract where the injured party is a local business. In addition, Trade Wings' claims are not based solely on breach of contract and warranties. Trade Wings claims that SMTEK violated the New Hampshire Consumer Protection Act. N.H. Rev. Stat. Ann. ch. 358-A (1995 & Supp. 2001). New Hampshire enacted its Consumer Protection Act to protect consumers within the state from unfair or deceptive practices and such practices are implicated in this suit.

c. Plaintiff's Interest in Obtaining Convenient Relief

The third gestalt factor requires that I accord Trade Wings' choice of forum a degree of deference. See, e.g., Sawtelle, 70 F.3d at 1396; Foster-Miller, 46 F.3d at 151; Pritzker, 42 F.3d at 64. Here, Trade Wings has selected New Hampshire as its forum. In addition, it would be more convenient for Trade Wings to litigate its contract and consumer protection claims in New Hampshire, the location of its headquarters and offices, rather than in a foreign jurisdiction.

d. Administration of Justice

I must determine the overall judicial system's interest in obtaining effective relief over this controversy. See Sawtelle, 70 F.3d at 1395; Ticketmaster, 26 F.3d at 211. Courts

often find that this factor does not weigh in either direction. Id. That is the case here and SMTEK does not contend otherwise.

### e. Pertinent Policy Arguments

The last of the gestalt factors requires a consideration of all sovereigns in promoting substantive social policies. See id. Trade Wings' claimed injury implicates the public policy favoring the prevention of unfair or deceptive acts in business transactions. New Hampshire has the strongest interest in this public policy because its citizen is the alleged victim of SMTEK's unfair and deceptive practices.

On balance, the gestalt factors support a determination that this court may reasonably assert jurisdiction over SMTEK.

## IV. CONCLUSION

For the forgoing reasons, I deny SMTEK's motion to dismiss (Doc. No. 6).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

October 10, 2002

cc:  W. Scott O'Connell, Esq.
     Paul McEachern, Esq.