New World Technologies v. Meller       CV-00-228-JM   12/14/01
## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

New World Technologies, Inc.

    v.                                    Civil No. 01-228-JM
                                          Opinion No. 2001 DNH 222

Adolf Meller Company


### O R D E R

In this diversity action, plaintiff New World Technologies, Inc. ("New World") asserts breach of contract claims against defendant Adolf Meller Company ("Meller").[1]  Presently before the court is Meller's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (document no. 4), to which New World objects.  For the reasons that follow, the court denies the motion.

### Standard of Review

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists."   Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar

_____

[1]Although Meller is the named defendant, the allegations contained in the complaint concern a Division of Meller known as Advanced Laser Technologies.

<u>Ass'n</u>, 142 F.3d 26, 34 (1st Cir. 1998). <u>See</u> <u>also</u> <u>Boit v. Gar-Tec</u> <u>Prods., Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992). Where, as here, the court elects to dispose of a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies a <u>prima</u> <u>facie</u> standard of review. <u>United Elec.</u> <u>Radio & Machine Workers of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 43 (1st Cir. 1993)("<u>Pleasant St. II</u>"). Under this standard, the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits. <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1385 (1st Cir. 1995); <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994). The court will accept specific facts affirmatively alleged by the plaintiff as true and construe them in the light most favorable to the plaintiff. <u>See</u> <u>Massachusetts</u> <u>Sch. of Law</u>, 142 F.3d at 34; <u>Sawtelle</u>, 70 F.3d at 1385. In doing so, however, the court will not "credit conclusory allegations or draw farfetched inferences." <u>Ticketmaster-New York</u>, 26 F.3d at 203.

<u>Background</u>

The relevant facts, set forth in the light most favorable to the plaintiff's jurisdictional claim, are as follows. New World

2

is a New Hampshire corporation that is in the business of automated machinery and process control engineering. New World conducts virtually all of its operations from its offices in Hopkinton, New Hampshire.

In August 2000, New World entered into an agreement with Advanced Laser Technologies ("Advanced"), a Division of defendant Meller, which is in the business of incorporating laser guided manufacturing systems into industrial equipment. Pursuant to the agreement, Advanced agreed to purchase from New World a custom made Laser Positioning System.[2] The purchase price for the system was $223,000. New World alleges that Advanced breached the agreement by failing to complete payments due for the project. New World also alleges that Advanced breached a second, separate agreement by failing to pay the balance due for services and materials furnished by New World in connection with the repair of a Troyke table.[3]

Neither Meller, a Rhode Island corporation, nor Advanced,

_____

[2]Pursuant to the August 2000 agreement between New World and Advanced, both New World and a company known as Stanley Engineering Company were responsible for developing the Laser Positioning System.

[3]New World provided no definition of a Troyke table.

3

which conducts its business in Stoneham, Massachusetts,[4] has operations in New Hampshire. Nevertheless, between November 1999 and January 2001, Advanced solicited business from New World on at least seventeen occasions. As a result of these solicitations, Advanced and New World entered into eleven separate contracts, including the contracts that are the subject of this lawsuit. Advanced issued purchase orders to New World for the performance of the contracts by sending the purchase orders to New World's New Hampshire offices. On August 28, 2000, Advanced issued a purchase order to New World for the development, shipping and handling of the Laser Positioning System.[5] Subsequently, New World commenced work on the project at its premises in Hopkinton, New Hampshire.

During the course of the parties' relationship, Advanced employees communicated with New World by placing telephone calls to plaintiff in New Hampshire and sending letters and e-mails to plaintiff's New Hampshire facility. Because New World's operations are located in New Hampshire, it can be inferred that

_____

[4]Stoneham, Massachusetts is located less than sixty miles from the New Hampshire border.

[5]Along with the August 28, 2000 purchase order, Advanced submitted to New World specifications for the Laser Positioning System. See Document No. 6, Exhibit D.

4

many if not most of the communications between the parties with respect to the contracts at issue in this lawsuit involved contacts with the State of New Hampshire.[6]  In fact, much of the negotiations and discussions concerning the Laser Positioning System, as well as the development, design and implementation of the project occurred in New Hampshire.  Only the delivery, programming and fine-tuning of the project took place outside New Hampshire.

Although the Laser Positioning System involved in this dispute is currently located in Massachusetts, a number of potential witnesses reside in New Hampshire.  These witnesses include the plaintiff's employees and a principal of Stanley Engineering Company, which was involved in the project's development.

## Discussion

A.   Personal Jurisdiction Analysis

In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the

---

[6]New World has no operations in Massachusetts, leases no facilities or offices in Massachusetts, maintains no telephone lines there and employs no agents or other representatives there.

due process clause of the Fourteenth Amendment.  See Sawtelle, 70 F.3d at 1387; Ticketmaster-New York, 26 F.3d at 204.  New Hampshire's corporate long-arm statute, N.H. Rev. Stat. Ann. § 293-A:15.10, authorizes jurisdiction over foreign corporations to the full extent permitted by the federal Constitution.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999); McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994).  Because New Hampshire's long-arm statute is coextensive with the limits of due process, the traditional two-part personal jurisdiction inquiry collapses into the single question of whether due process requirements have been met.  See Sawtelle, 70 F.3d at 1388; McClary, 856 F. Supp. at 55. Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Accordingly, the method of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the defendant's contacts with the forum.  See Phillips Exeter Acad., 196 F.3d at

288.

The court may exercise two types of jurisdiction – general and specific.  "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state'." Massachusetts Sch. of Law, 142 F.3d at 34 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)("Pleasant St. I")).  "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities."  Id. Because the parties' arguments concern specific jurisdiction,[7] and because I find that this court has specific jurisdiction over Meller, I decline to address whether the court may exercise general jurisdiction over the defendant.

The First Circuit uses a three-part analysis to determine whether there are sufficient contacts to exercise specific personal jurisdiction over a defendant.  See Sawtelle, 70 F.3d at

_____

[7]It is unclear from the plaintiff's brief whether New World also intended to argue that the court has general jurisdiction over Meller.

7

1388-89.  First, the court must decide whether the claim underlying the litigation arises directly out of the defendant's activities within the forum.  See Phillips Exeter Acad., 196 F.3d at 288; Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995).  This relatedness requirement "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."  Ticketmaster-New York, 26 F.3d at 206.  See also Sawtelle, 70 F.3d at 1389.  Thus, the requirement ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm.  See Ticketmaster-New York, 26 F.3d at 207.

Second, the court must determine whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable'."  Sawtelle, 70 F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089).  One cornerstone of the purposeful availment test is voluntariness.  See id. at 1391. Thus, personal jurisdiction over the defendant is proper where

the defendant deliberately has engaged in significant activities within the forum, but not where the defendant's contacts with the forum result solely from "the 'unilateral activity of another party or a third person'." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)(quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)). The other cornerstone of the purposeful availment test is foreseeability. See Ticketmaster-New York, 26 F.3d at 207. Accordingly, the court must determine whether the defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into court there. See Sawtelle, 70 F.3d at 1393; Ticketmaster-New York, 26 F.3d at 207 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Finally, if the first two parts of the test for specific jurisdiction have been fulfilled, the court must decide whether the exercise of personal jurisdiction is reasonable in light of the "Gestalt" factors. See Sawtelle, 70 F.3d at 1394; Pleasant St. II, 987 F.2d at 46. "These Gestalt factors include: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in

9

obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pleasant St. II, 987 F.2d at 46. Even when the suit arises out of the defendant's minimum contacts with the forum, therefore, the court may not exercise personal jurisdiction if to do so would be unreasonable.

"[A]n especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Ticketmaster-New York, 26 F.3d at 210. On the other hand, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id.

B. Jurisdiction Over the Defendant

1. Relatedness

"Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad., 196 F.3d at 289. In a contract case, relatedness is established if "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Id. See also

10

<u>Massachusetts Sch. of Law</u>, 142 F.3d at 35 (formation of contract).  Although the facts alleged by New World lack detail, they nevertheless are sufficient to show that the defendant's New Hampshire contacts were instrumental in the formation of the contracts at issue in this case.  Advanced actively solicited business from New World, which resulted in the formation of the contracts that have given rise to the plaintiff's cause of action.  <u>See</u> <u>Whittaker Corp. v. United Aircraft Corp.</u>, 482 F.2d 1079, 1083-84 (1st Cir. 1973)(soliciting business from a resident of the forum state considered evidence of significant contacts).  Advanced also issued purchase orders to New World for the performance of the contracts by sending the purchase orders to New World's New Hampshire offices.  Along with the purchase order for the Laser Positioning System, Advanced supplied the specifications for the development of the project.  <u>See</u> <u>id.</u> at 1084 (providing specifications and procedures governing plaintiff's performance constituted evidence of significant contacts).  Moreover, Advanced participated in the formation of the agreement for the Laser Positioning System by taking part in negotiations and discussions that occurred primarily in New Hampshire.  <u>See</u> <u>Pleasant St. I</u>, 960 F.2d at 1089-90 (defendant's

11

negotiation of a contract within the forum state can be thought to give rise or relate to a subsequent claim asserting breach of that contract). Based upon the facts asserted by the plaintiff, the defendant's alleged breach of contract arises out of and relates to Advanced's activities within New Hampshire.

2. Purposeful Availment

To satisfy the purposeful availment prong of the specific jurisdiction test, New World must show that the defendant's "participation in the economic life of [New Hampshire]" rose "above that of a purchaser who simply places an order and sits by until the goods are delivered." Whittaker Corp., 482 F.2d at 1084. I conclude that New World has alleged and provided evidence of jurisdictional facts which, if true, demonstrate that Advanced's contacts with New Hampshire (1) were voluntary and not the product of New World's unilateral actions, and (2) created an ongoing relationship with a resident of the forum, thereby making it foreseeable that Advanced would be haled into court in New Hampshire. In particular, Advanced's active participation in the contractual arrangements with New World demonstrates that it was not a passive purchaser.

During a period of about fourteen months, Advanced actively

12

solicited business from New World. The solicitations resulted in the contracts that are the subject of this litigation. Advanced issued purchase orders to New World for the performance of the contracts by sending the purchase orders to New World's New Hampshire offices. Advanced also negotiated the terms of the contract for the Laser Positioning System in New Hampshire and supplied New World with the specifications for the project by sending the specifications as an attachment to the purchase order. During the design, development and implementation of the project, which occurred primarily in New Hampshire, Advanced communicated with New World in New Hampshire. The evidence shows, therefore, that Advanced reached out to the plaintiff's state of residence to establish a relationship with New World, transmitted information to New World in New Hampshire and communicated with New World at its New Hampshire facilities. These contacts are sufficient to demonstrate that Advanced deliberately engaged in significant activities within the forum. See Phillips Exeter Acad., 196 F.3d at 292 (solicitations directed at a resident of the forum constitute purposeful activity related to the forum); Sawtelle, 70 F.3d 1389-90 ("The transmission of information into New Hampshire by way of

13

telephone or mail is unquestionably a contact for purposes of our analysis."); Pleasant St. II, 987 F.2d at 45 (negotiation of a contract in the forum deemed a significant contact).

Furthermore, it is significant that the contracts at issue in this case were only two of eleven contracts that the parties entered into over the course of about fourteen months as a result of Advanced's solicitations. Where, as here, the defendant reaches out beyond one state and creates a continuing relationship and obligations with a citizen of the forum state, the defendant "manifestly has availed himself of the privilege of conducting business there" and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King Corp., 471 U.S. at 473, 476. Advanced's deliberate activities within New Hampshire make its involuntary presence before a New Hampshire court a reasonably foreseeable event.

3. Reasonableness

The Gestalt factors weigh heavily in favor of this court's exercising jurisdiction. With respect to the first element, considered the "primary concern" among the Gestalt factors, see Ticketmaster-New York, 26 F.3d at 210, I find that there is

14

little if any inconvenience to the defendant in being forced to litigate the dispute in New Hampshire.  Stoneham, Massachusetts, the site of Advanced's operations, is located less than sixty miles from the New Hampshire border, and the time required to drive from Stoneham to this court's location in Concord, New Hampshire is little more than one hour.  It is fair to infer that most if not all of the Advanced employees who were involved in the contracts giving rise to this dispute work in Stoneham and live in the surrounding area.[8]  Any burden on witnesses who are required to travel to New Hampshire, where traffic is light and inexpensive parking is abundant, is negligible.

The fact that Meller is based in Rhode Island is of no significance.  It is apparent from the evidence that the parties submitted that Meller's Rhode Island operations had little if any connection to the circumstances that gave rise to this matter, and that no important witnesses reside in Rhode Island.  Moreover, Meller has failed to demonstrate why it would be unusually burdensome for Rhode Island residents to travel to New Hampshire.  Therefore, the possibility that the defendant may be

_____

[8]Based on the defendant's own evidence, all of its employees who witnessed the work done under the Laser Positioning System contract are located in Massachusetts, as is an important third-party witness.

15

required to send representatives from its Rhode Island offices to New Hampshire in connection with the litigation is insufficient to reach constitutional significance. See Pritzker, 42 F.3d at 64 (the first Gestalt factor "is only meaningful where a party can demonstrate some kind of special or unusual burden.").

The second Gestalt factor, concerning the forum state's interest in adjudicating the dispute, also cuts in favor of exercising jurisdiction. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp., 471 U.S. at 473 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). See also Pritzker, 42 F.3d at 64 (one of a state's greatest interests is in the conduct of forum-based litigation). That interest is more significant when the case concerns a contract having substantial value and involves the production of goods within the forum. See In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 232 (6th Cir. 1972)(the state's interest in resolving a suit brought by one of its residents is particularly significant where the contract calls for the production of goods worth over $200,000, and for performance of the contract within the forum state). Here,

Advanced agreed to pay New World $223,000 for the Laser Positioning System. Moreover, the design, development and implementation of the Laser Positioning System occurred almost entirely in New Hampshire.

The third Gestalt factor to consider is the plaintiff's interest in obtaining convenient and effective relief. The First Circuit has repeatedly observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. Certainly, it would be more convenient for the plaintiff to litigate its breach of contract claims in the forum in which it operates. This is particularly true where, as here, the plaintiff's potential witnesses reside in New Hampshire.

The remaining factors – the judicial system's interest in obtaining the most effective resolution of the controversy and the common interests of all sovereigns in promoting substantive social policies – have not been addressed by either party. Nothing in the record suggests that either of these elements of the jurisdictional analysis would favor one party over the other.

At the first stage of the due process inquiry, New World was able to show that its cause of action arose from, or related to,

17

defendant's contacts with New Hampshire.  At the second stage of the inquiry, New World succeeded in establishing the defendant's purposeful availment of the privilege of conducting activities in New Hampshire.  Although New World may have strengthened its showing on these first two prongs of the tripartite test by providing more detailed evidence regarding the specifics of its contractual relationships with Advanced, consideration of the Gestalt factors decisively tips the scale in favor of New World's jurisdictional arguments.

Conclusion

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum in which he has established no meaningful 'contacts, ties, or relations'."  Burger King Corp., 471 U.S. at 471-72 (quoting Int'l Shoe Co., 326 U.S. at 319).  Taking, as this court must, the allegations in the complaint and the plaintiff's supporting affidavit as true, and construing them in a manner most favorable to the plaintiff's position, the court finds that the exercise of personal jurisdiction over the defendant comports with the due process protections of the Constitution.  Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction

(document no. 4) is denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: December 14, 2001


cc:   Stephen R. Goldman, Esq.
      John A. Rachel, Esq.